CITY AND COUNTY OF HONOLULU; COUNTY OF HAWAII; COUNTY OF MAUI; COUNTY OF KAUAI; EILEEN R. ANDERSON; ANDREW I. T. CHANG; LAWRENCE KOSEKI; MARILYN WHITING; STANLEY H. L. LUM; STANLEY T. SHIRAKI; ROBERT N. KUMASAKA; ROY H. TANJI; WILLIAM F. REMULAR; WALLACE Y. KUNIOKA; GARY M. SLOVIN; STANLEY D. SUYAT; FRANCIS J. SANTOS; BENJAMIN FUKUMOTO; PETER D. LEONG; DONALD Y. ASAO; MELVIN M. NONAKA; THOMAS C. BLONDIN; WILLARD T. CHOW; RALPH PORTMORE; DR. ANNA MARIA BRAULT; DOROTHY K. ONO; FRANCIS KEALA; HAROLD FALK; JOSEPH CONANT; CHARLES K. TORIGOE; SHARON NARIMATSU; MICHAEL M. McELROY; ROBERT B. JONES; DR. CHARLES B. ODOM; DR. RICHARD Y. K. WONG; MARSHA PETERSEN; ROBERT K. MASUDA; SAM CARL; CHARLES F. MARSLAND, JR.; PAUL TOYOZAKI; MICHAEL J. CHUN; WILLIAM A. BONNET; AARON D. MAHI; ROY A. PARKER; and DAIL RHEE, Plaintiffs-Appellees, Cross-Appellants, *v.* GOVERNOR GEORGE R. ARIYOSHI, in his capacity as Governor of the State of Hawaii, and STATE OF HAWAII, Defendants-Appellants, Cross-Appellees

(CIVIL NO. 72604)

ARTHUR E. ROSS, Deputy Prosecuting Attorney, City and County of Honolulu, State of Hawaii, individually and as representative of all others similarly situated, Plaintiff-Appellee, Cross-Appellant, *v.* STATE OF HAWAII; and GOVERNOR GEORGE R. ARIYOSHI, in his capacity as Governor, Defendants-Appellants, Cross-Appellees

(CIVIL NO. 72605)

NO. 9459

OCTOBER 17, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, JJ.
AND INTERMEDIATE COURT OF APPEALS
CHIEF JUDGE JAMES S. BURNS IN PLACE OF
WAKATSUKI, J. RECUSED

414

OPINION OF THE COURT BY HAYASHI, J.

This is an appeal taken from a grant of summary judgment by the lower court which declared sections 34 and 34A of Act 129, Session Laws of Hawaii 1982, unconstitutional, but upheld the constitutionality of section 35 of the Act. We reverse the decision because the enactment of sections 34 and 34A is a proper exercise of the legislature's function to control matters of statewide concern. The question of the validity of section 35 is thereby mooted.

I.

Act 129, Session Laws of Hawaii 1982, was enacted on March 27, 1982, and was entitled "A Bill for an Act Relating to the Compensation of Public Officers and Employees and Making an Appropriation Therefor." Section 34 of Part IV of the Act, codified into Hawaii Revised Statutes (HRS) § 46-21.5, prohibited increases of salaries to county officers and employees exempt from civil service.

Section 34A of Part IV of the Act, codified into HRS § 78-18.3, prohibited any salary increases of certain public officers whose salary was directly or indirectly dependent upon the public sector's collective bargaining process.

Section 35 of Part IV of the Act, codified as caveats to HRS §§ 46-21.5 and 78-18.3, required counties to return to the State any salary increases made from grants-in-aid from the State if sections 34 and 34A were deemed invalid for any reason by a court.

The counties and the local public executives filed a complaint for declaratory judgment (Civil No. 72604) in circuit court on August 2, 1982, challenging the legality and constitutionality of Part IV of Act 129. Arthur E. Ross, a Deputy Prosecuting Attorney, filed a similar action (Civil No. 72605) on the same day, and the two actions were eventually consolidated on November 30, 1982. A motion and cross-motion for summary judgment were filed with the court and were both partially granted on May 19, 1983. The court below declared sections 34 and 34A "void, invalid and unenforceable and in violation of county self-government and 'home rule' protected by article VIII, section 2," of the state constitution and found section 35 to be constitutionally valid. Record, Vol. II at 284.

## II.

Article VII (now article VIII), section 2 of the Constitution of the State of Hawaii was amended in 1968 to grant "home rule" to the counties. The provision reads:

### LOCAL SELF-GOVERNMENT; CHARTER

SECTION 2. Each political subdivision shall have the power to frame and adopt a charter for its own self-government within such limits and under such procedures as may be provided by general law. Such procedures, however, shall not require the approval of a charter by a legislative body.

Charter provisions with respect to a political subdivision's executive, legislative and administrative structure and organization shall be superior to statutory provisions, subject to the authority of the legislature to enact general laws allocating and reallocating powers and functions.

A law may qualify as a general law even though it is inapplicable to one or more counties by reason of the provisions of this section.

Under this provision, the framers granted counties the power to enact ordinances concerning the "structure and organization" of the county governments. These ordinances are to be superior to

conflicting state statutes, but subject to the power of the legislature to enact "general laws allocating and reallocating powers and functions." *Id.*

Regardless of the meaning attached to these phrases, the power of the legislature to enact laws of statewide concern was not limited by section 2. Article VIII, section 6 of our state constitution provides:

### STATEWIDE LAWS

SECTION 6.   This article shall not limit the power of the legislature to enact laws of statewide concern.

In order to give effect to section 6, the power of the legislature to enact laws of statewide concern regarding local self-government cannot be diminished.

The legislature enacted HRS Chapter 89 in 1970 to allow public employees to use collective bargaining but excluded executive officers therefrom. Under article VIII, the counties established ordinances to create pay rates for their executive officers.

The legislature in 1982 enacted HRS § 46-21.5 (section 34 of Act 129) which states:

[§ 46-21.5] *Prohibition on increase of salaries of certain county officers and employees.*   The salary of a city and county or county officer or employee of the executive branch who is:

(1) Exempt from civil service by section 76-77(1), but whose salary is or becomes at least equal to or more than the salary of the head of any department of the city or county under which employed; or

(2) Exempt from civil service by § 76-77(2); shall not be increased after June 30, 1982.

Sections 76-77(1) and (2) govern the status of the mayor, elected officers, heads of departments and other managers and supervisors.[1]

---

[1] § 76-77 *Civil service and exemptions.*   The civil service to which this part applies comprises all positions in the public service of each county, now existing or hereafter established, and embraces all personal services performed for each county, except the following:

(1) Positions in the office of the mayor, but the positions shall be included in the position classification plan;

(2) Positions of officers elected by public vote; positions of heads of departments and positions of one first deputy or first assistant of heads of departments. . . .

The legislature also enacted HRS § 78-18.3 (section 34A of Act 129) which provides:

[§ 78-18.3] *Prohibition on certain increases in salaries for certain state and county officers or employees.* Any law to the contrary notwithstanding, neither the State nor any of the counties shall provide or pay to the following state or county officers or employees any adjustment or increase in his or her respective salary or compensation where such adjustment or increase constitutes a mandatory adjustment or increase which is, directly or indirectly, dependent upon and related to negotiated salary adjustments or increases received under collective bargaining agreements by civil service or other public employees covered by collective bargaining: any elected or appointed officer or employee in the executive and judicial branches of state government and the executive branch of any county government (1) whose salary or compensation is fixed, limited, or otherwise specified by statute, ordinance, or other legislative enactment whether or not in express dollar amounts or express dollar amount ceilings; (2) who is not subject to chapters 76 and 77; and (3) who is excluded from collective bargaining and not subject to chapter 89C.

The conflict between the charter provisions and the statutory provisions requires this court to determine whether this area is one of statewide concern and therefore a permissible area of control reserved for the legislature or if the area is one of local self-government and therefore granted to the counties through the home rule provision in the constitution.

### III.

Before we address the constitutional issue further, we must first decide whether the parties to this case have standing to question the validity of the statutory enactments. The parties do not question the standing of any individual except for Arthur E. Ross. They concede that the Mayor and all other named plaintiffs have a sufficient interest in the outcome of the suit to have standing because their salaries are frozen by Act 129. The State alleges that Ross, however, is not affected by sections 34 or 34A.

Pursuant to the constitution, the City and County of Honolulu

enacted Revised Ordinances of Honolulu (ROH) § 6-3.1 (1978) which provided:

Sec. 6-3.1. *Deputies and Clerks.*

The salary ranges and schedules of the deputies and law clerks of the Departments of the Corporation Counsel and Prosecuting Attorney shall be set by the Corporation Counsel and Prosecuting Attorney respectively with the salary range and schedule of the highest ranking deputy to be five percent less than that of the Corporation Counsel or Prosecuting Attorney and for subsequent salary ranges and schedules in descending order with a five percent differential between salary ranges and schedules.

Thus a deputy prosecuting attorney, exempt from civil service laws by HRS § 76-77(3) could achieve a salary of 95% of the prosecuting attorney, who received a salary 10% above the highest amount payable to an employee at SR-31 in the salary schedule applicable to city and county civil service employees. Pursuant to ROH § 6-4.3(b) the SR pay scale is determined through the collective bargaining process. Thus, collective bargaining places a limit on the salary of deputies.

Under these legislative enactments, the prosecuting attorney's salary is frozen, even though he would have been eligible to receive a 10% increase in pay due to a collective bargaining agreement which increased SR pay scales on July 1, 1982. Also therefore, any deputy prosecuting attorney who had reached the highest pay scale available under ROH § 6-3.1 was frozen in his or her pay.

Thus, Ross' salary schedule is definitely dependent on the civil service pay grade. The amount of wages Ross receives is contingent on the prosecuting attorney's salary which is directly dependent on the civil service salary at the SR-31 level. If the SR-31 salary scale is raised or lowered pursuant to collective bargaining, the prosecuting attorney's salary is also raised or lowered. The amount which Ross may receive is also subject to change.

The crucial inquiry into the issue of standing is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his implication of the court's jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Life of the Land v. Land Use Commission,* 63 Haw. 166, 623 P.2d 431 (1981). Where restraints imposed by a statute act directly on an

individual and a claim of specific present objective harm is presented, standing to challenge the constitutionality of the statute exists. *State v. Bloss*, 64 Haw. 148, 637 P.2d 1117 (1981), *cert. denied*, 459 U.S. 824 (1982). One must show that as applied to him the statute is constitutionally invalid. *State v. Marley*, 54 Haw. 450, 509 P.2d 1095 (1973). Ross has shown such an interest.

## IV.

Every enactment of the legislature carries a presumption of constitutionality and should be upheld by the courts unless it has been shown to be, beyond all reasonable doubt, in violation of the constitution. *State v. Petrie*, 65 Haw. 174, 649 P.2d 381 (1982).

The fundamental principle in construing a constitutional provision is to give effect to the intention of the framers and the people adopting it. *HGEA v. County of Maui*, 59 Haw. 65, 576 P.2d 1029 (1978). In construing a constitutional provision the court may look to the object sought to be established and the matters sought to be remedied along with the history of the times and state of being when the constitutional provision was adopted. *State v. Kahlbaun*, 64 Haw. 197, 638 P.2d 309 (1981).

Although the Constitutional Convention of 1968 created "home rule," it did not repeal section 6 which reserves matters of statewide concern to the legislature:

> The Committee felt that this section [section 6] should be inserted to make clear the Committee's position, that section 2 of this Committee's proposal does not restrict any of the powers of the legislature on State matters.

Stand. Comm. Rep. No. 74, Vol. I, *Proceedings of the Constitutional Convention of Hawaii*, at 230 (1960).

We stated in *HGEA* that "the constitutional protection afforded county governments against legislative intrusion is far from total. The constitutional amendments made to article VII [now article VIII], on local government, did not grant to the political subdivisions complete home rule." *HGEA*, 59 Haw. at 85, 576 P.2d at 1041. The local governments were given only limited freedom from legislative control.

Various matters[2] were reserved for the state legislature:

The word "personnel" was omitted because your Committee was convinced that the legislature should not be deprived of the power to enact, and maintain in effect, laws such as Act 188, S.L.H. 1961. Under the committee proposal, no charter provision could supersede Act 188 S.L.H. 1961 [which enacted HRS Chapter 77, the statewide civil service compensation law], unless the legislature so provided.

\* \* \* \* \*

As presented by your Committee, therefore, the area which the proposal places beyond legislative control is limited to charter provisions as to the executive, legislative and administrative structure and organization of the political subdivision.

Stand. Comm. Rep. No. 53 (Majority), Vol. I, *Proceedings of the Constitutional Convention of Hawaii of 1968*, at 229 (1973).

Thus in *HGEA* we held that a political subdivision could not adopt provisions in its charter which are repugnant to existing or future laws in the area of personnel. *HGEA*, 59 Haw. at 85, 576 P.2d at 1041.

After review of the proceedings of the Constitutional Convention of 1968, we concluded that "[f]rom an examination of the framers' Standing Committee Report No. 53 (majority), we think it is clear that they intended the final authority on all civil service and compensation matters to remain with the legislature." *HGEA*, 59 Haw. at 86, 576 P.2d at 1041.

From this review of the history of the adoption of the constitutional provision at hand, it is clear that the state legislature may enact general laws concerning state matters. Provisions of a charter or ordinance of a political subdivision of the state will be held superior to legislative enactments only if the charter provisions

---

[2] In construction of constitutional provisions words used in the constitution are presumed to be used in their natural sense, unless context furnishes some ground to control, qualify or enlarge them. *State ex rel. Amemiya v. Anderson*, 56 Haw. 566, 545 P.2d 1175 (1976). The definition of "personnel" matters may include the paying of persons, because "personnel matters" is given no particular limited meaning. *HGEA* recognized that the framers considered such matters to be of statewide concern like the philosophy of Act 188.

relate to a county government's executive, legislative or administrative structure and organization. Personnel matters, including civil service and compensation matters, remain subject to legislative control.

The purpose of Act 129 was to increase the salaries of certain government officials and to freeze the salaries of others who had been receiving mandatory increases over a period of time and to review the salaries of all state and county employees. The intent of the legislature was to alleviate existing pay inequities in the public sector, by increasing salaries of certain executive branch officers, judges and judicial officers and legislative agency officers of the state government which were limited by statute, and freeze the salaries of county officers and employees whose salaries had not been so limited. The Act was designed to alleviate problems such as conflicts of interest and lack of an equitable, integrated, and reasonable overall statewide compensation structure for state and county officers and employees, according to levels of duties, responsibilities or functions. Hse. Stand. Comm. Rep. No. 686-82, in 1982 House Journal, at 1210-1211.

The rationale of section 34 is that "a schedule of integrated, equitable, and reasonable salaries among top-level officers of all jurisdictions is necessary to provide for more efficient and effective government." Act 129, § 34, 1982 Haw. Sess. Laws 193, 211. The legislature found "that this section concerns purely personnel matters within the powers of the legislature and does not intrude upon the executive or administrative structure or organization of any county. The legislature further [found] that this section is a law of statewide concern and interest and is necessary to provide for more efficient and effective government for the people of Hawaii." *Id.* at 212.

A similar exposition of the legislature's rationale is given for section 34A. *Id.* at 213-214.

We agree that the area of compensation of county officials is a matter of statewide concern where a salary structure integrated with that of the state structure will provide for more efficient and effective government for the people of Hawaii. It is a matter within the powers of the legislature and does not intrude upon the executive, legislative or administrative structure or organization of the counties.

## V.

Since sections 34 and 34A of Act 129 are constitutionally valid, we need not discuss the issue on appeal with respect to section 35.

*Charlene M. Aina,* Deputy Attorney General, for defendants-appellants, cross-appellees Ariyoshi, et al.

*Francis M. Nakamoto,* Deputy Corporation Counsel for plaintiffs-appellees, cross-appellants City and County, et al.

*Arthur E. Ross, (Shirley Smith* with him on the reply brief) Deputy Prosecuting Attorneys, for plaintiff-appellee, cross-appellant Ross.

## DISSENTING OPINION OF LUM, C.J., WITH WHOM NAKAMURA, J., JOINS

I cannot come to the same conclusions reached by the majority. I am compelled to voice my dissent.

### I.

I agree with the majority that Ross has standing to challenge the constitutionality of Section 34 and 34A of Act 129, Session Laws of Hawaii 1982.

Because the majority chose to uphold the validity of these sections, the majority did not reach the issue of the constitutionality of section 35. Although I also conclude that the constitutionality of section 35 need not be reached, I do so for another reason.

Section 35 requires the counties to reimburse the State for grants-in-aid given to them in the event that sections 34 and 34A were held to be unconstitutional. I am unable to see how Ross is tangibly injured or personally affected by the State action of section 35. *Life of the Land v. Land Use Commission,* 63 Haw. 166, 623 P.2d 431 (1981). If a statute contains separable provisions, a person may challenge only those provisions which operate to injure him, and he may not challenge those provisions that cause him no harm. *Bell v. Hongisto,* 501 F.2d 346, 355, 356 (9th Cir. 1974). I therefore conclude that Ross has no standing to challenge section 35 and given

the additional circumstance that the counties did not challenge the constitutionality of section 35, I likewise conclude that its constitutionality need not be determined.

## II.

What is at stake in the outcome of the constitutionality of sections 34 and 34A is "home rule" for the counties. While the general political concept of "home rule" is amorphous, article VII (now article VIII), sections 2 and 6 of the Hawaii State Constitution is an attempt by our founding fathers to guide us in determining the concept of "home rule" for the counties.

But, before discussing these provisions let me say first of all that in my opinion, the majority misinterprets *HGEA v. County of Maui*, 59 Haw. 65, 576 P.2d 1029 (1978). *HGEA* dealt exclusively with matters dealing with civil service personnel and compensation, which led the court to find statewide concern. The *HGEA* court stated specifically:

> From an examination of the framers' Standing Committee Report No. 53 (majority), we think it is clear that they intended the final authority on *all civil service and compensation matters to remain with the legislature.* (Emphasis added).

*Id.* at 86, 576 P.2d at 1041.

In contrast to *HGEA* this case involves salaries for positions of key officers and employees of the counties. All of these positions are exempt from civil service laws and regulations. I cannot conclude as the majority does that the action of the legislature in "freezing" or regulating such salaries constituted "civil service and compensation matters" or for that matter, constituted a regulation within an "area of personnel." To do so, I think, is stretching *HGEA* beyond its boundaries.

## III.

Under sections 2 and 6, the structure and organization of county governments are not free from legislative control. However, under the constitutional scheme, the legislature can exercise such control only through the enactment of general laws allocating and reallocating powers and functions of the county governments or

through the enactment of laws which are of statewide concern.

The constitutional scheme must be strictly adhered to, otherwise home rule is meaningless to the counties.

I submit that Act 129 is neither a general law allocating or reallocating powers and functions of the county governments nor a law of statewide concern; it is actually a statutory law inferior to the charter provisions providing for the structure and organization of the county governments.

In my opinion, Act 129 is an unconstitutional infringement by the legislature upon the structure and organization of the county governments. The freezing of salaries for key officers and personnel strikes at the heart of the structure and organization of the county governments. The lack of qualified, responsible and competent officers to fill important government positions causes an erosion of governmental structure and organization.

I cannot conclude that Act 129 is an allocation or reallocation of power because the county governments continue to retain power to set these salaries.

The fact that the legislature found that salaries of these key officers to be higher than their State counterparts, and found statewide concern in this area does not make the legislative findings a statewide concern of constitutional dimension. *Bishop v. City of San Jose*, 1 Cal. 3rd 56, 81 Cal. Rptr. 465, 460 P.2d 137 (1969). There is nothing in the law that requires salaries of exempt officials of one county bear a certain relationship to salaries of the State government or to other county governments.

Each county has its own complexity, size and peculiarity. Each should be allowed to dictate salaries for exempt positions without legislative interference; the final authority on the reasonableness of these salaries should rest with the people of each county and not with the legislature. Therefore, I cannot conclude that Act 129 is of statewide concern.

I see sections 34 and 34A as a curtailment of home rule for the counties. I would sustain the trial court.

SEPARATE OPINION OF NAKAMURA, J.

I wholeheartedly agree with the Chief Justice's reasoning and conclusion that sections 34 and 34A of Act 129 breach the principle of "home rule" for the counties which has been written into the Constitution of the State of Hawaii. But I believe section 35 is afflicted with a similar infirmity and Arthur E. Ross has standing to challenge its constitutionality.

Section 35, in my opinion, represents a transparent attempt to exercise by indirection a power withheld from the legislature by the framers of the constitution and the people of Hawaii. I would also declare it unconstitutional.