**STATE OF HAWAII**, Petitioner, v. **STEVEN H. LEVINSON**,
Judge of the Circuit Court of the First Circuit, State of Hawaii,
**ALEXANDER S. CARVALHO, JR.**, Respondents

NO. 14473

(CR. NO. 88–0068)

JULY 16, 1990

LUM, C.J., PADGETT, HAYASHI,
WAKATSUKI, AND MOON, JJ.

OPINION OF THE COURT BY PADGETT, J.

This case comes before us on a petition for a writ of mandamus or prohibition. It raises a question of whether under our State Constitution, a defendant's attorney, in a felony case, may, in exercising peremptory challenges of jurors, intentionally and deliberately pursue a pattern of excluding women, because they are women, from the jury. We answer no, and grant appropriate relief.

On January 19, 1988, respondent Alexander S. "Boy" Carvalho, Jr., was charged with the murder of his wife. Jury selection commenced in the courtroom of respondent Steven H. Levinson on April 11, 1990. The venire consisted of 67 men and 45 women and there were no challenges to its composition by either the State or respondent Carvalho. The prospective jurors were questioned about their ability to serve for a long trial, their exposure to pre-trial publicity and their ability to be impartial.

After questioning, 41 potential jurors, *who had been passed for cause by the parties*, were selected at random. The State and respondent Carvalho were each given 13 peremptory challenges: 12 as to the jury proper and one as to the three alternates. The result was that, if each party exercised all of its peremptory challenges, there would be 15 jurors remaining, the first 12, in order, to sit as the regular jurors, and the 3 others as alternates. The peremptory challenges were exercised in the absence of the jury.

Of the 41 remaining potential jurors, 12 were women. In the course of the voir dire, the State excused 2 women and 9 men and waived to two challenges. Respondent Carvalho exercised his first six peremptory challenges to exclude women. At that point, the State raised the question of whether or not there was a pattern of systematic discriminatory exclusion of women by respondent

Carvalho, and moved to strike his first six peremptory challenges. Respondent Carvalho objected strenuously to any requirement that he give a non-gender explanation for the exercise of his six per-emptory challenges, and the respondent judge determined that the question, at that point, did not have to be resolved, but took the State's motion under advisement, and the exercise of peremptory challenges was resumed.

The State renewed its objection when respondent Carvalho used his seventh peremptory challenge to strike a woman but the judge again reserved ruling. After the parties had each been given an opportunity to exercise their 13 challenges, a potential jury con-sisting of 11 men and 1 woman, with 3 male alternates remained. Respondent Carvalho had excused 9 women and 3 men and waived one challenge. However, his attorney informed the judge that he had intended to exercise his last challenge to excuse the remaining female juror, but for the chilling effect of petitioner's allegedly untimely motion, and the trial judge's consideration of it. The trial judge then took up the motion to strike. Respondent Carvalho's attorney admitted that at least some of the women were excused solely due to their gender, stating that he believed it would be in his client's best interest to have an all-male jury.

Because there was no constitutional ruling in this state that forbade defendants in criminal cases from exercising their peremp-tory challenges in a manner which discriminated on the basis of race, creed, color or gender, and because there was no holding that an intentional pattern of exclusion of women on the basis of gender was impermissible under the Hawaii State Constitution, the judge denied the State's motion, but recessed the trial to enable the State to seek extraordinary relief in the form of the present petition for a writ of mandamus or prohibition.

Peremptory challenges in criminal cases in this state are allowed under Hawaii Revised Statutes (HRS) §§ 635–29 and 635–30 and Hawaii Rules of Penal Procedure (HRPP) 24(b).

However, as Justice Marshall noted in his concurring opinion in *Batson v. Kentucky*, 476 U.S. 79, 108, 106 S. Ct. 1712, 1729, 90 L. Ed. 2d 69, 95 (1986):

> [T]he right of peremptory challenge is not of constitutional magnitude, and may be withheld altogether without impairing the constitutional guarantee of impartial jury and fair trial. *Frazier v. United States*, 335 U.S. 497, 505, n.11[, 69 S. Ct. 201, 206 n.11, 93 L. Ed. 187] (1948); *United States v. Wood*, 299 U.S. 123, 145[, 57 S. Ct. 177, 185, 81 L. Ed. 78] (1936); *Stilson v. United States*, 250 U.S. 583, 586[, 40 S. Ct. 28, 29–30, 63 L. Ed. 1154] (1919)[.]

The history of peremptory challenges, which are a creature of statutes and court rules, was traced at length by Chief Justice Burger in his dissent in *Batson, supra*, and it would unduly extend this opinion to repeat that history here. The rationale behind allowing peremptory challenges was set forth by Chief Justice Burger in that dissenting opinion, quoting from *Swain v. Alabama*, 380 U.S. 202, 219, 85 S. Ct. 824, 835, 13 L. Ed. 2d 759, 772 (1965):

> The function of the challenge is not only to eliminate extremes of partiality on both sides, *but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise.* In this way the peremptory satisfies the rule that "to perform its highest function in the best way, 'justice must satisfy the appearance of justice.'"

(Emphasis added.) Both Justice Marshall in his concurrence, and Chief Justice Burger in his dissent, noted however that

> [o]ur criminal justice system "'requires not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held.'"

*Batson*, 476 U.S. at 107, 126 (Marshall, J., concurring; Burger, C.J., dissenting, respectively). This principle was laid down long, long ago in *Hayes v. Missouri*, 120 U.S. 68, 70, 7 S. Ct. 350, 353, 30 L. Ed. 578 (1887).

In *Batson v. Kentucky*, the United States Supreme Court held that where there is established a prima facie case of racial discrimination, by the prosecution, in the exercise of peremptory challenges in a criminal trial, the prosecutor may be required to give a racially neutral explanation of the exercise of the challenges. We followed that ruling some three months ago in *State v. Batson*, 71 Haw. 300, 788 P.2d 841 (1990), and thus protected criminal defendants from peremptory challenges by the prosecution based solely on race.

We have, in other related, but dissimilar contexts, protected the defendant's right, in a criminal case, to a fair trial. Thus, in *State v. Larue*, 68 Haw. 575, 722 P.2d 1039 (1986), we ordered a new trial where a juror, in effect, vouched for the credibility of the complainant, based not on the evidence in the record, or the appearance of the witnesses on the stand, but her own similar personal experience and recollection thereof. More recently, in *State v. Sugiyama*, 71 Haw. 389, 791 P.2d 1266 (1990), we overturned a jury verdict where one of the jurors falsely stated during voir dire that he would not hold the fact that the defendant did not testify against him in the consideration of the case. In *State v. Rulona*, 71 Haw. 127, 785 P.2d 615 (1990), we ordered a new trial on several grounds, among which was prosecutorial misconduct, quoting Ethical Consideration (EC) 7–13:

> The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.

The public often perceives the protection which our judicial system affords defendants as being one–sided, and complains that, seemingly, the defendant has rights, while the citizens, as a whole,

have none. That impression is wrong. The people do have civil rights and our system should as assiduously protect those rights as it does those of criminal defendants.

Defense counsel, of course, has a duty to represent his client zealously within the bounds of the law, but that duty to the client, is the same as the duty to the adversary system of justice. Thus, EC 7–19 states: "The duty of a lawyer to his client and his duty to the legal system are the same: to represent his client zealously within the bounds of the law."

Unfortunately, there has grown up an impression, among some defense lawyers, that the mandate to represent a client zealously overrides the qualification "within the bounds of the law."

Unfortunately also, as this case illustrates, the defense sometimes engages in subverting the purpose of peremptory challenges, which is to help achieve a jury which is, in appearance, and in fact, impartial.

Our constitution provides in Article I, Section 5:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

Here, respondent Carvalho's counsel was, by his own admission, using peremptory challenges to excuse women from the jury, solely because they were women, and for the purpose of obtaining an all–male jury. He was thus not concerned with the fact, or the appearance of partiality, or impartiality, of the women he excused solely on the basis of their gender. He clearly was attempting to obtain what he hoped would be a partial, rather than an impartial jury. This is not zealous representation within the bounds of the law. It is the contrary.

The question then is whether the Constitution of the State of Hawaii forbids such conduct. We agree with the reasoning of the

Court of Appeals of the State of New York in *People v. Kern*, 555 N.Y.S.2d 647, 554 N.E.2d 1235 (1990), construing a similar provision of the New York Constitution, in a case in which the defense, in effect, was claiming the right to exercise peremptory challenges in a racially biased manner.

In a lengthy and well–reasoned opinion, the New York court held first that:

> Racial discrimination in the selection of juries harms the excluded juror by denying this opportunity to participate in the administration of justice, and it harms society by impairing the integrity of the criminal trial process. . . .
>
> . . . While it is true that no citizen has a right to sit on any particular petit jury, the Legislature has declared as the policy of this State that "all eligible citizens shall have the opportunity (and obligation) to serve on grand and petit juries in this state." . . . We hold today, that this opportunity for service on a petit jury is a privilege of citizenship which may not be denied our citizens solely on the basis of their race.

*Id.* at 654–55, 554 N.Ed.2d at 1242–43. We have similar statutory provisions.

HRS § 612–1 provides:

> It is the policy of this State that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this State and an obligation to serve as jurors when summoned for that purpose.

HRS § 612–2 provides:

> A citizen shall not be excluded from jury service in this State on account of race, color, religion, sex, national

origin, economic status, or on account of a physical handicap except as provided in section 612–4(3).

We hold that the right to serve on a jury is a privilege of citizenship, guaranteed by the constitution, and provided for by statute, and that, under our Constitution, that right cannot be taken away for any of the prohibited bases of race, religion, sex or ancestry.

In *Kern*, *supra*, the New York court also went on to hold that racially biased exercise of peremptory challenges were also prohibited by the equal protection clause of the New York State Constitution, a clause which is parallel to the equal protection clause found in Article I, Section 5 of our State Constitution. The New York court reasoned that while the equal protection clause is called into play only where state action is involved, that, given the statutory basis for peremptory challenges, and the fact that it is the judge who must excuse the juror, the defendant's racially biased peremptory challenges were converted into State action, and were therefore contrary to the equal protection clause.

In our state we have an express prohibition, not only of racial discrimination, but of gender discrimination. Accordingly, we also hold that the exclusion of women jurors solely because of their gender denied them equal protection under the Constitution of this State.

We therefore hold that, when a prima facie case of the use of peremptory challenges by the defense to discriminate against potential jurors because of their race, religion, sex or ancestry is established, it is incumbent upon the court to require a non–discriminatory explanation of the challenge, which satisfies it that the challenge is not based on a prohibited discriminatory basis, before excusing the juror.

We recognize the practical difficulties this will impose upon the trial courts. It would be a more happy situation if the courts could, as they have in the past, rely on the good faith of the

prosecutors and defense counsel to exercise their peremptory challenges to achieve an impartial jury in a constitutionally permissible manner. Unfortunately, as *Batson, supra*, and the facts in this case demonstrate, that good faith is not always present. The fact that the matter is difficult does not do away with the compelling necessity that criminal jury trials be fair and impartial in appearance, and in fact, nor do away with the fact that the civil rights of everyone, the defendant, the jurors, and the citizenry in general, must be protected by the courts.

In this particular case, the trial judge should conduct an appropriate inquiry to ascertain whether the 41–person panel of potential jurors has become aware of these proceedings and the issues raised herein. If the trial judge perceives that these proceedings have come to the attention of the potential jurors, he should seriously consider, in the interest of fairness, granting a mistrial and calling a new venire. If, on the other hand, it appears that a fair trial can be had with the present 41–member panel, then he should give defense counsel an opportunity to state, on the record, with respect to each of his peremptory challenges of women, a gender neutral basis therefor, and the court should then make a determination as to whether or not the challenge was in fact gender neutral, excusing those jurors who were challenged on a gender neutral basis and refusing to excuse those who were not. In those cases where the peremptory challenge is disallowed because of gender bias, the defense should be permitted an additional peremptory challenge.

A writ has issued with the foregoing instructions.

*Edward H. Kubo, Jr.*, Deputy Prosecuting Attorney, for petitioner.

*Edwin L. Baker*, Deputy Attorney General, for respondent Levinson.

*Robert Finlay* for respondent Carvalho.

## DISSENTING OPINION OF WAKATSUKI, J.

I respectfully dissent.

At the outset, I want to emphasize that I do not condone the exclusion of individuals from sitting as jurors solely on the basis of race, religion, sex, or ancestry. However, in this case, the petition for writ of mandamus or prohibition should not have been granted or denied based on gender discrimination as prohibited by our constitution. Rather, the writ should have been dismissed based on petitioner's lack of standing to obtain the relief petitioner sought.

### A.

The primary question to be first answered is whether petitioner has standing in this case for the relief it seeks. In *Hawaii's Thousand Friends v. Anderson*, 70 Haw. 276, 768 P.2d 1293 (1989), there was an allegation that fraud committed by public officials resulted in unlawful depletion of public funds. But this court determined that the plaintiffs in that case lacked standing regardless of whether the allegations were true or not. We, therefore, denied relief to the plaintiffs.

> Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated. And the crucial inquiry in its determination is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of . . . [the court's] jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. [490,] 498–99 (original emphasis).

*Hawaii's Thousand Friends v. Anderson*, 70 Haw. at 281, 768 P.2d at 1298 (quoting *Life of the Land v. Land Use Comm'n*, 63

Haw. 166, 172, 623 P.2d 431, 438 (1981)); *City & County v. Ariyoshi*, 67 Haw. 412, 418, 689 P.2d 757, 762 (1984).

Here, the majority fails to explain how the State of Hawaii, represented by the prosecutor, obtained standing to raise the issue of gender discrimination in this proceeding. The State does not serve on the jury, nor is the State the object of gender discrimination. Further, the State has not shown that, in fact, it has suffered an injury to itself, nor that it has been denied the constitutional right of equal protection. *See State v. Wilburn*, 49 Haw. 651, 654, 426 P.2d 626, 629 (1967). "Constitutional rights may not be vicariously asserted." *State v. Marley*, 54 Haw. 450, 457, 509 P.2d 1095, 1101 (1973).

## B.

The relief granted to the State is premised on the following, to–wit: (1) the right to serve on a petit jury is a privilege of citizenship which cannot be arbitrarily denied, and (2) the equal protection clause of the constitution prohibits gender discrimination in petit jury selection.

Overlooking the issue of "standing," the majority proceeds to hold that State action brings this case within the ambit of the equal protection clause of our constitution. "[G]iven the statutory basis for peremptory challenges, and the fact that it is the judge who must excuse the juror, the defendant's [] biased peremptory challenges were converted into State action[.]" *State v. Levinson*, 71 Haw. 493, 500, ___ P.2d ___, ___ (1990). I disagree with such reasoning because in this case the majority converts a "privilege" to serve into a "right" to serve on a petit jury as a protected right under our constitution, a right to be enforced by the judge. Yet, we do not hear any complaints from the women regarding their exclusion, nor do I envision a judge enforcing the seating of an individual upon his or her insistence to serve as a juror when he or

she is challenged peremptorily on a legitimate basis. Further, such reasoning must logically apply to peremptory challenges in civil cases. *See Fludd v. Dyke*, 863 F.2d 822 (11th Cir. 1989).

I foresee in both criminal and civil trials these "Batson" inquiries "stretching out trials that are already too long, by making the voir dire a Title VII proceeding in miniature," *United States v. Clark*, 737 F.2d 679, 682 (7th Cir. 1984), and eventually nullifying the whole purpose of peremptory challenges. "[I]t is quite probable that every peremptory challenge could be objected to on the basis that, because it excluded a venireman who had some characteristic not shared by the remaining members of the venire, it constituted a 'classification' subject to equal protection scrutiny." *Batson v. Kentucky*, 476 U.S. 79, 124 (1986) (Burger, C.J., dissenting).

## C.

The majority opinion strongly implies that its decision in this action is merely the other side of the coin to our recent decision in *State v. Batson*, 71 Haw. 300, 788 P.2d 841 (1990). The outcome of *State v. Batson* was mandated by the United States Supreme Court's ruling in *Batson v. Kentucky*, 476 U.S. 79 (1986). As I compare this case with both the U.S. Supreme Court's and this court's *Batson* cases, I am of the opinion that the prosecutor's right to raise questions of discrimination is now far broader than the defendant's right to do so. This is an irony that should not be perpetrated under the guise of "discrimination."

In *Batson v. Kentucky*, the court held that a defendant must first make a prima facie showing of purposeful discrimination in the selection of the petit jury by use of peremptory challenges. Once a prima facie showing is made, the State has the burden of coming forward with a neutral explanation for exercising peremptories on the excluded jurors.

To [make a prima facie showing], the defendant first must [establish] that *he is a member of a cognizable racial group* and that the prosecutor has exercised peremptory challenges to remove from the venire *members of the defendant's race.*

*Batson v. Kentucky*, 476 U.S. at 96 (emphasis added) (citation omitted).

Similarly, this court held in *State v. Batson*, 71 Haw. at 302–03, 788 P.2d at 842 (emphasis added).

The rule of law, which we adopt for future cases, is that whenever the prosecution so exercises its peremptory challenges . . . to exclude *entirely* from the jury *all* persons who are of the *same ethnical minority as the defendant*, and that exclusion is challenged by the defense, there will be an inference that the exclusion was racially motivated, and the prosecutor must, to the satisfaction of the court, explain his or her challenges on a non–ethnical basis.

These cases indicate that where the prosecutor has suspiciously excluded members of one cognizable group of which the defendant is not a member, the defendant will not be able to demand an explanation from the prosecutor for such exclusion. For example, a defendant of one ancestry group cannot complain that the prosecutor has used peremptory challenges to exclude all jurors of another ancestry group. Were the tables turned and the defense exercises its peremptory challenges by excluding all jurors of the same ancestry group, but not the defendant's, the prosecutor will be able to compel an explanation. Placing a more difficult burden on the defense than on the prosecution in a criminal trial is contrary to the basic tenets of fairness in our criminal justice system.

There is another digression from *State v. Batson* which the majority fails to explain. As noted above, the prosecutor can be compelled to explain his or her peremptory challenges when *all* of

the members of a cognizable group are excluded. In this case, not *all* of the women were excluded. Although the defense attorney indicated that he would have excluded the last remaining female juror but for the prosecutor's motion, the fact remains that not all the members of a cognizable group were excluded. The jury included one woman. Furthermore, the prosecutor himself excluded by peremptory challenges nine male jurors. After listening to argument by the prosecutor, I am convinced that he had patently attempted to exclude males in favor of female jurors.

### D.

The majority recognizes that its decision will impose practical difficulties upon the trial courts. *Levinson*, 71 Haw. at 500–01, ___ P.2d at ___. Some of the difficulties I foresee are (1) the protraction of voir dire which will greatly extend the length and increase the costs of trials; (2) the escalation of rancor and animosity between the parties resulting from accusations of discrimination and bigotry; and (3) the injection of unnecessary peripheral issues into trial. Moreover, there will be the added and continuous burden upon the trial court to sua sponte or upon motion to determine whether unlawful discrimination based on sex, race or religion had been patently exercised in the selection of jury members.

### E.

The further erosion of the historical purpose for peremptory challenges is simply unnecessary in this case. I would hold that the State lacked standing to raise the constitutional issue of "equal protection" in seeking relief before this court, and therefore, would dismiss the petition.