**STATE of Tennessee, Appellee,**

v.

**Lonnie Winford TURNER, Appellant.**

Supreme Court of Tennessee,
at Jackson.

June 13, 1994.

Guy T. Wilkinson, Dist. Public Defender, Camden, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Eugene J. Honea, Asst. Atty. Gen., Nashville, for appellee.

### OPINION

DROWOTA, Justice.

Lonnie Winford Turner appeals from the Court of Criminal Appeals' affirmance of his conviction on one count of incest and one count of sexual battery. This appeal presents two issues for our determination: (1) whether the evidence was sufficient to support the jury's verdict; and (2) whether the trial court was correct in refusing to allow Turner to use his peremptory strikes to remove all the females from the jury venire.

### THE FACTS

Turner was indicted on two counts of incest for the alleged sexual involvement with his fifteen and thirteen year old daughters; he pleaded not guilty to both offenses. During the voir dire stage of Turner's trial, the prosecutor objected to defense counsel's use of his peremptory strikes, arguing that he

was attempting to strike all the females from the jury venire. The defense counsel asserted that he was entitled to exercise the peremptory strikes in any way he wished; he frankly admitted that he was trying to empanel an all-male jury. The trial court sustained the State's motion, explaining that:

> The Court is a strong believer that you have the right to exercise your peremptory challenges as you choose—within the constraints of the law that have been laid down.
>
> It is quite clear that no one, either state nor the defendant, can use peremptory challenges for the purpose of excluding a minority—whether it is women, black, whatever it might be—from the jury. The standing belongs to that person on the jury. They have a right not to be excluded ... [T]his started out with black jurors, [but] it has gone to any cognizable minority group.
>
> So it is this Court's ruling that you will not be allowed to use your peremptory challenges [to exclude females from the jury, unless you provide] some other reason ... If you can verbalize your reasons for excluding the juror, I will look at it.

After the jury was empanelled, Turner's daughters testified that they had been sexually abused for several years. Their testimony was corroborated by testimony by officials from the girls' schools and by employees of the Tennessee Department of Human Services. Additionally, a pediatrician testified that his examination of the girls revealed evidence of vaginal penetration. Turner attempted to rebut this evidence by pointing out inconsistencies in his daughters' testimony; he denied having any sexual involvement with his daughters. Although Turner had initially confessed to sexually abusing his daughters,

he recanted this confession at trial, claiming that he had confessed "to protect his family." The jury returned a verdict of guilty, and Turner appealed to the Court of Criminal Appeals.

A two member majority of the Court of Criminal Appeals (consisting of Judge Dwyer and Special Judge Beasley) affirmed the judgment of the trial court. The majority did not, however, adopt the reasoning of the trial court on the peremptory strikes issue. In its analysis, the majority noted that defense counsel had admitted that he was using his peremptory strikes in an attempt to empanel jurors who would be "sympathetic" to his case. This, the majority held, was impermissible because the settled purpose of the peremptory challenge is only to assure a "fair and impartial" jury, not to enable the parties to select "sympathetic" jurors. The majority did not reach the issue of whether gender-based strikes were prohibited by the federal or state constitutions.

Judge White concurred in the judgment, but wrote separately in order to address the constitutional aspects of the peremptory strikes issue. After discussing the applicable precedents of the United States Supreme Court, Judge White stated that the principles announced in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), should apply equally to peremptory strikes based solely on gender. Judge White thus approved both the result reached by the trial court and the rationale underlying that result.

Because of the disagreement in both federal and state courts regarding the applicability of *Batson* to gender-based strikes,[1] and because the United States Supreme Court had not spoken to the issue at that time, we granted Turner's Rule 11 application.

1. *See e.g., United States v. De Gross,* 960 F.2d 1433 (9th Cir.1992); *State v. Burch,* 65 Wash. App. 828, 830 P.2d 357 (1992); *Tyler v. State,* 330 Md. 261, 623 A.2d 648 (1993); *State v. Gonzales,* 111 N.M. 590, 808 P.2d 40 (App.1991); *State v. Levinson,* 71 Haw. 492, 795 P.2d 845 (1990) (extending *Batson* to gender-based strikes); *but see United States v. Broussard,* 987 F.2d 215 (5th Cir.1993); *United States v. Nichols,* 937 F.2d 1257 (7th Cir.1991); *United States v. Hamilton,* 850 F.2d 1038 (4th Cir.1988); *State v. Culver,* 233 Neb. 228, 444 N.W.2d 662 (1989); *Hannan v. Commonwealth,* 774 S.W.2d 462 (Ky. App.1989) (refusing to extend *Batson* to gender-based strikes).

### I.

■ Before addressing the primary issue in this case—the propriety of the trial court's ruling on the defendant's use of his peremptory strikes—we must first address Turner's argument that the State presented insufficient evidence to support the jury's verdict of guilty. The Court of Criminal Appeals rejected this argument, holding that because of the amount and quality of the State's evidence, "the jury could and did find the appellant guilty of the indicted offenses beyond a reasonable doubt." After a thorough review of the record, we are in complete agreement with the Court of Criminal Appeals. We therefore affirm the judgment on this issue.

### II.

We now move to the primary issue in this case. Although the majority's reluctance to address the constitutional aspects of this issue is understandable given the lack of guidance at that time by either the United States Supreme Court or this Court, we cannot approve the analysis employed by the majority of the Court of Criminal Appeals.

■ The majority's belief that a party cannot use peremptory strikes to achieve a jury that he believes will be "sympathetic" implies that each party bears an *individual* responsibility for ensuring the impartiality of the jury. This implication is, however, contrary to the theory upon which the peremptory challenge is based. While it is true that the objective of the peremptory challenge is to assure that a fair jury is empanelled, this objective is attained by giving both parties a limited number of opportunities to strike members of the venire whom they believe, for whatever reason, will be the most biased against their case (or unsympathetic). *See Swain v. Alabama,* 380 U.S. 202, 218–220, 85 S.Ct. 824, 831–35, 13 L.Ed.2d 759 (1965). The theory of the process is that the parties

will purge the most "extreme" (in terms of perceived bias) members of the venire. *See Holland v. Illinois,* 493 U.S. 474, 484, 110 S.Ct. 803, 809, 107 L.Ed.2d 905 (1990). Therefore, instead of placing the burden of ensuring the jury's impartiality on each party and thereby requiring that he choose only "fair" jurors, the process contemplates that each party will exhibit blatant self-interest by choosing "sympathetic" jurors and that the ultimate impartiality of the jury will be the *collective* product of these clashing expressions of self-interest. *See* Barbara A. Babcock, *Voir Dire: Preserving "Its Wonderful Power,"* 27 Stan.L.Rev. 545, 551 (1975) ("Of course, neither litigant is trying to choose 'impartial' jurors, but rather to eliminate those who are sympathetic to the other side, hopefully leaving only those biased *for* him. But the interplay of the efforts of both sides to accomplish the same end should leave surviving jurors who are, as Lord Coke described them, 'indifferent as they stand unsworn'."). Therefore, the mere fact that the defense counsel frankly admitted that he wanted sympathetic jurors in no way renders his usage of the strikes impermissible.[2]

Peremptory strikes, by definition, may be exercised for any reason unless that reason is specifically prohibited by legislation or by judicial decision. At the time of Turner's trial, no decision of the United States Supreme Court or of this Court prohibited peremptory strikes based solely on gender. However, since that time the Supreme Court has spoken to the issue in *J.E.B. v. Alabama ex rel. T.B.,* —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). In *J.E.B.,* the state of Alabama brought a paternity action on behalf of T.B., the mother of a minor child, against the defendant J.E.B. At trial, the State used 9 of its 10 peremptory strikes to remove males from the jury; the resulting jury was all female. The defendant objected, arguing that the State's use of its perempto-

---

2. The malleable nature of the word "fair" illustrates the implausibility of the majority's analysis. Instead of responding that he was attempting to choose "sympathetic" (male) jurors, the defense counsel could have replied that he was trying to choose "fair" jurors because he truly believed that the female members of the venire would have been biased against his client. This explanation would presumably have satisfied the concerns of the majority; yet it is not substantively different than the first, truthful explanation.

ry strikes violated the Equal Protection Clause of the Fourteenth Amendment to the federal constitution. The trial court rejected this argument and J.E.B. was adjudged the father of the child. The Alabama Court of Civil Appeals affirmed the judgment;[3] and the Alabama Supreme Court denied J.E.B.'s petition for a writ of certiorari. The United States Supreme Court granted his certiorari petition in order to resolve the aforementioned split of authority on the parameters of *Batson.*

■ The Supreme Court reversed the judgment of the Alabama Court of Civil Appeals. In an opinion by Justice Blackmun,[4] the Court applied intermediate scrutiny and determined that peremptory strikes made solely on the basis of gender violate the dictates of the Equal Protection Clause because they do not substantially further the State's admittedly legitimate interest in achieving fair and impartial trials. After recounting the history of the exclusion of women from the political process generally and from jury service in particular, the Court rejected Alabama's contention that the peremptory strikes were justifiable because women, as a group, might be more sympathetic to a complaining female in a paternity case than would men otherwise qualified to serve on the jury. The Court asserted that Alabama's proffered rationale, instead of constituting the "exceedingly persuasive" explanation needed to justify a governmental classification or action based solely on gender, *see Mississippi University for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982), was in fact "the very stereotype that the law condemns." *J.E.B.* —— U.S. at ——, 114 S.Ct. at 1426 (quoting *Powers v. Ohio,* 499 U.S. 400, 410, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991)).

The Court further objected that "[r]espondent seems to assume that gross generalizations that would be deemed impermissible if made on the basis of race are somehow permissible when made on the basis of gender." *J.E.B.* —— U.S. at ——, 114 S.Ct. at 1427. The Court explained the dangers associated with these unfounded stereotypes and generalizations in unequivocal terms:

> Discrimination in jury selection, whether based on race or gender, causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process. The litigants are harmed by the risk that the prejudice which motivated the discriminatory selection of the jury will infect the entire proceedings ... The community is harmed by the state's participation in the perpetuation of invidious group stereotypes and the inevitable loss of confidence in our judicial system that state-sanctioned discrimination in the courtroom engenders.

> When state actors exercise peremptory challenges in reliance on gender stereotypes, they ratify and reinforce prejudicial views of the relative abilities of men and women. Because these stereotypes have wreaked injustice in so many other spheres of our country's public life, active discrimination by litigants on the basis of gender during jury selection "invites cynicism respecting the law's neutrality and its obligation to adhere to the law." *Powers v. Ohio,* 499 U.S. at 412 [111 S.Ct. at 1371]. The potential for cynicism is particularly acute in cases where gender-related issues are prominent, such as cases involving rape, sexual harassment, or paternity. Discriminatory use of peremptory challenges may create the impression that the judicial system has acquiesced in suppress-

---

**3.** 606 So.2d 156 (Ala.Ct.Civ.App.1992).

**4.** Justices Stevens, O'Connor, Souter, and Ginsburg joined Justice Blackmun's opinion. Although she joined the majority opinion, Justice O'Connor wrote separately in order to enunciate her view that criminal defendants and civil litigants should not be affected by the prohibition on gender-based strikes. *J.E.B.* —— U.S. at ———–——, 114 S.Ct. at 1435–38. Justice Ken-

nedy wrote an opinion concurring in the result reached by the majority. *J.E.B.* at ——–——, 114 S.Ct. at 1438–39. Chief Justice Rehnquist wrote a dissenting opinion. *J.E.B.* at ——–——, 114 S.Ct. at 1434–36. Justice Scalia also wrote a dissenting opinion, in which the Chief Justice and Justice Thomas joined. *J.E.B.* at ——–——, 114 S.Ct. at 1436–39.

ing full participation by one gender or that the "deck has been stacked in favor of one side." [citation omitted].

In recent cases we have emphasized that individual jurors themselves have a right to nondiscriminatory jury selection procedures ... Contrary to respondent's suggestion, this right extends to both men and women ... All persons, when granted the opportunity to serve on a jury, have the right not to be excluded summarily because of discriminatory and stereotypical presumptions that reflect and reinforce patterns of historical discrimination. Striking individual jurors on the assumption that they hold particular views simply because of their gender is "practically a brand upon them, affixed by law, an assertion of their inferiority." *Strauder v. West Virginia,* 100 U.S. 303, 308 [25 L.Ed. 664] (1880). It denigrates the dignity of the excluded juror, and, for a woman, reinvokes a history of exclusion from political participation. The message it sends to all those in the courtroom, and all those who may later learn of the discriminatory act, is that certain individuals, for no reason other than gender, are presumed unqualified by state actors to decide important questions upon which reasonable persons could disagree.

*J.E.B.* —— U.S. at ——–——, 114 S.Ct. at 1427–28.

Although the Court held that peremptory strikes made solely on the basis of gender were constitutionally impermissible, the Court was careful to note that women could be struck peremptorily, provided that an articulable, gender-neutral reason was given and that reason was not pretextual. The Court also noted that strikes based on characteristics that are disproportionately related to one gender could be proper, absent a showing of pretext by the party opposing the strike.[5]

The Supreme Court's clear holding in *J.E.B.* finally puts to rest an issue that has divided federal and state courts since *Batson* was announced in 1986. Under that holding, the ruling of the trial court and its underlying rationale were unquestionably correct. Therefore, the judgment of the Court of Criminal Appeals is affirmed.

REID, C.J., and O'BRIEN, ANDERSON and BIRCH, JJ., concur.

---

**5.** The Supreme Court used the example of strikes of persons with military experience and strikes of persons employed as nurses. The Court explained that although each category would probably disproportionately affect one gender, the

challenges would, absent a showing of pretext, not be unconstitutional because they are not race or gender-based. *J.E.B.* at ——, n. 16, 114 S.Ct. at 1429 n. 16.