THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANKIE LANN, Defendant-Appellant.

First District (2nd Division)   No. 1—90—2966

Opinion filed April 19, 1994.

DiVITO, P.J., concurring in part and dissenting in part.

Michael J. Pelletier and Nan Ellen Foley, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Barbara Jones, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Frankie Lann was convicted by a jury on charges of armed robbery, kidnapping, aggravated kidnapping, and aggravated battery arising out of events occurring on May 25, 1983, and was sentenced to 13 years' imprisonment. On a prior appeal, we affirmed defendant's convictions and sentence, but remanded the case for a *Batson* hearing to determine if the State improperly used its peremptory challenges to exclude African-Americans from the jury. *People v. Lann* (1990), 194 Ill. App. 3d 623, 551 N.E.2d 276, *appeal denied* (1990), 132 Ill. 2d 550, 555 N.E.2d 381.

The following facts were adduced at the *Batson* hearing before Circuit Judge John M. Mannion.[1] Defendant and the victim were both African-Americans, as was at least one of the two witnesses called by the State against him. In using seven of its 10 peremptory challenges, six of the seven potential jurors excused by the State were African-Americans. The petit jury, including one alternate, consisted of eight white men, two white women, one African-American man, and two African-American women. The jury cards, which were admitted into evidence, establish that but for the following three similar characteristics, the potential jurors excluded by the State were a heterogeneous group: (1) as already noted, six of the seven were African-Americans; (2) six of the seven were women; and (3) all seven were unmarried.[2] One of the arguments made by the prosecutor at the *Batson* hearing in opposition to defendant's racial discrimination claim and in justification of the State's claim as to the heterogeneity of the group was that five of the six of the excluded African-Americans were women.

Judge Mannion held that defendant had not made out a *prima facie* case of racial discrimination under *Batson*, basing his decision on the following factors: (1) the percentage of African-Americans on the petit jury was almost identical to the percentage of African-Americans in Cook County; (2) the State used only 7 of its 10 peremptory challenges; (3) the State did not challenge three African-American venire members who ultimately formed one-fourth of the petit jury; (4) the State had in mind the type of juror that it was looking for; and (5) the judge had presided over several cases where the assistant State's Attorney in question was the prosecutor and, to his knowledge, the prosecutor had never even been accused of systematically excluding African-Americans.

---

[1]Circuit Judge Lawrence Genesen, who presided over defendant's trial in 1985, retired before the *Batson* hearing was held in this case.

[2]One of the excluded venire members was actually separated from her husband.

Defendant appeals Judge Mannion's determination that he did not make out a *prima facie* case of racial discrimination under *Batson*. He also alleges for the first time that the State violated *Batson* during his trial because it improperly used its peremptory challenges to exclude women from the petit jury, conceding that he did not object to the prosecutor's alleged gender discrimination during *voir dire*, in his post-trial motion, or in the original appeal of his conviction, nor during the *Batson* hearing after we remanded the case for that purpose.

# I

## A

Prior to the United States Supreme Court's decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, a defendant was entitled to a reversal of his conviction in a case where the prosecutor had practiced purposeful racial discrimination in the selection of jurors only by establishing the State's systematic and intentional pattern of excluding venire members on the ground of race in "case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be." (*Swain v. Alabama* (1965), 380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) *Batson*, however, expressly overruled *Swain* and held that a defendant may establish a *prima facie* case of purposeful discrimination in the selection of the petit jury based solely on the prosecutor's exercise of peremptory challenges at the defendant's trial. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) In *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, the Supreme Court declared that the rule in *Batson* applies to all cases which were pending on direct review at the time that it handed down its *Batson* decision. This is such a case.

*Batson* established a two-step procedure for resolving defendant's claim that the prosecution used its peremptory challenges in a racially discriminatory manner. First, the defendant must establish a *prima facie* case of purposeful discrimination in the selection of his jury, and if he or she succeeds in making such a case, the burden then shifts to the State to come forward with a race-neutral explanation for challenging each of the venirepersons. *Batson*, 476 U.S. at 96-97, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.

In order to establish a *prima facie* case of discriminatory jury selection under *Batson*, a defendant initially had to show that he was a member of a cognizable racial group and that the prosecutor had exercised his peremptory challenges to remove members of the

defendant's race from the venire panel. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) Subsequently, however, the United States Supreme Court, held in *Powers v. Ohio* (1991), 499 U.S. 400, 402, 113 L. Ed. 2d 411, 419, 111 S. Ct. 1364, 1366, that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." In order to make a *prima facie* showing of discrimination after *Powers*, the defendant is required to raise only an inference that the prosecutor exercised peremptory challenges to remove venire members based upon race. (*People v. Andrews* (1992), 146 Ill. 2d 413, 424, 588 N.E.2d 1126, 1133.) In doing so, the defendant is entitled to rely on the fact that peremptory challenges "constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723, quoting *Avery v. Georgia* (1953), 345 U.S. 559, 562, 97 L. Ed. 1244, 1247-48, 73 S. Ct. 891, 892.) The defendant must show that this fact and any other relevant circumstances raise an inference that the prosecutor peremptorily challenged venirepersons on account of their race. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.

■ Although the United States Supreme Court has not provided an exhaustive list of factors that a trial court should consider in deciding whether a defendant has made out a *prima facie* case of racial discrimination, the Illinois Supreme Court has consistently identified the following indicia as "relevant circumstances" which trial courts should consider in making the *prima facie* determination: (1) a pattern of strikes against African-American jurors; (2) the prosecutor's questions and statements made during *voir dire* examination and in exercising his challenges; (3) the disproportionate use of peremptory challenges against African-Americans; (4) the level of African-American representation in the venire as compared to the jury; (5) whether the excluded African-Americans were a heterogeneous group sharing race as their only common characteristic; and (6) the race of the defendant, the victim and the witnesses. *People v. Coleman* (1993), 155 Ill. 2d 507, 514, 617 N.E.2d 1200, 1204; *People v. Pecor* (1992), 153 Ill. 2d 109, 127, 606 N.E.2d 1127, 1135; *Andrews*, 146 Ill. 2d at 426, 588 N.E.2d at 1134; *People v. Henderson* (1990), 142 Ill. 2d 258, 287-88, 568 N.E.2d 1234, 1248-49; *People v. Hooper* (1989), 133 Ill. 2d 469, 508, 552 N.E.2d 684, 701-02; *People v. Mahaffey* (1989), 128 Ill. 2d 388, 412, 539 N.E.2d 1172, 1184; *People v. Evans* (1988), 125 Ill. 2d 50, 63-64, 530 N.E.2d 1360, 1365.

Other factors occasionally identified by the supreme court as relevant to a *prima facie Batson* case are: (1) the trial court's knowledge

of local conditions and local prosecutors (*Andrews*, 146 Ill. 2d at 435, 588 N.E.2d at 1134; *Evans*, 125 Ill. 2d at 67, 530 N.E.2d at 1366-67); (2) whether the prosecutor used all of his peremptory challenges (*Hooper*, 133 Ill. 2d at 508, 552 N.E.2d at 701-02; accord *People v. Knott* (1991), 224 Ill. App. 3d 236, 251, 586 N.E.2d 479, 490, *appeal granted* (1992), 145 Ill. 2d 640, 596 N.E.2d 634, *vacated as moot* (1993), ____ Ill. 2d ____, 621 N.E.2d 611); and (3) whether the victim and the stricken venirepersons were of the same race. (*Andrews*, 146 Ill. 2d at 425, 588 N.E.2d at 1137.) Additionally, although the supreme court has warned that "mere numbers" do not establish a *prima facie* case (*Henderson*, 142 Ill. 2d at 258, 568 N.E.2d at 1248; *Mahaffey*, 128 Ill. 2d at 414, 539 N.E.2d at 1184), "the exclusion of even just one minority venireperson on account of race is unconstitutional and \*\*\* require[s] reversal of the conviction below." (*Andrews*, 146 Ill. 2d at 434, 588 N.E.2d at 1138; *People v. Harris* (1989), 129 Ill. 2d 123, 175, 544 N.E.2d 357, 380.) Finally, this court reviews a trial court's determination as to whether a defendant has established a *prima facie* case of discrimination under the manifest weight of the evidence standard. *Andrews*, 146 Ill. 2d at 425, 588 N.E.2d at 1133; *Evans*, 125 Ill. 2d at 64, 530 N.E.2d at 1365-66.

## B

Defendant contends that Judge Mannion's judgment that he did not present a *prima facie* case of racial discrimination was against the manifest weight of the evidence; on the contrary, he maintains, a consideration of the factors relevant to a *prima facie* determination leads to the conclusion that the evidence clearly establishes that the prosecutor peremptorily dismissed jurors on account of their race, and that the trial court considered factors irrelevant to a *prima facie* determination. We cannot agree.

■ The first factor relevant to our consideration is whether there was evidence of a " 'pattern' of strikes against black jurors." (*Evans*, 125 Ill. 2d at 63, 530 N.E.2d at 1365.) In *People v. Hope* (1991), 137 Ill. 2d 430, 560 N.E.2d 849, *vacated on other grounds* (1991), 501 U.S. 1202, 115 L. Ed. 2d 966, 111 S. Ct. 2792, *modified on reh'g* (1992), 147 Ill. 2d 315, 589 N.E.2d 503, the court explained:

"To create a pattern, strikes should do more than occasionally involve venire members of a certain race. The strikes should affect those members to such a degree or with such a lack of apparent nonracial explanation as to suggest the possibility of racial motivation." *Hope*, 137 Ill. 2d at 463, 560 N.E.2d at 864.

Accord *Andrews*, 146 Ill. 2d at 429, 588 N.E.2d at 1134.

In this case, the prosecutor struck six of the nine African-

Americans in the venire. We do not deem it to have been against the manifest weight of the evidence for the court to have concluded that these figures did not constitute a pattern of strikes against African-American venirepersons. Compare *Henderson*, 142 Ill. 2d at 288-91, 568 N.E.2d at 1249 (6 of 11 African-American venirepersons struck did not constitute a pattern of strikes); *People v. Garrett* (1990), 139 Ill. 2d 189, 204-05, 564 N.E.2d 784, 791 (six of nine African-American venirepersons struck did not constitute a pattern of strikes); *People v. Brisbon* (1989), 129 Ill. 2d 200, 230-31, 544 N.E.2d, 297, 312 (two of three African-American venirepersons struck did not constitute a pattern of strikes), with *Harris*, 129 Ill. 2d at 169-73, 544 N.E.2d at 378 (15 of 17 African-American venirepersons struck from jury constituted a pattern of strikes); *People v. Mack* (1989), 128 Ill. 2d 231, 237, 538 N.E.2d 1107, 1110 (13 of 14 African-American venirepersons struck constituted a pattern of strikes); *People v. McDonald* (1988), 125 Ill. 2d 182, 196-97, 530 N.E.2d 1351, 1357 (16 of 16 African-American venirepersons struck constituted a pattern); *People v. Johnson* (1990), 199 Ill. App. 3d 798, 803-04, 557 N.E.2d 565, 568 (15 of 17 African-American venirepersons struck constituted a pattern); *People v. Seals* (1987), 153 Ill. App. 3d 417, 422, 505 N.E.2d 1107, 1111 (six of seven African-American venirepersons struck constituted a pattern).

The statements made by the prosecutor during *voir dire* and while exercising his challenges constitute the second factor relevant to a *prima facie* determination. Defendant charges that the following statements made by the prosecutor during *voir dire* evidenced his intent to discriminate against African-Americans:

> "Judge, I only have one thing to add. So far the Defense has excused six people, and they are all White. I just want the record to reflect that.
>
>                               \* \* \*
>
> \*\*\* I would simply add that the defense excused nine individuals, of which seven were White, one Oriental or White."

Judge Mannion did not comment on these statements when he made his ruling; clearly, however, they can be interpreted simply as an attempt to preserve the record instead of playing "a game of black and white tag" as suggested by defendant. This is especially true when the remarks are considered in light of the court's comments regarding its knowledge of the prosecutor's history gained in previous trials.

The third factor relevant to establishing a *prima facie* case is whether the prosecutor used a disproportionate number of peremptory challenges against African-Americans. This inquiry is different

from the question of whether the prosecutor engaged in a pattern of strikes against African-Americans. The proportionality analysis compares the number of peremptories used against African-Americans versus the number used against whites, whereas the pattern analysis compares the number of African-Americans peremptorily challenged versus the number of African-Americans that could have been, but were not, struck by the State. See *McDonald*, 125 Ill. 2d at 196-97, 530 N.E.2d at 1357.

In the case at bar, the prosecutor used six peremptory challenges against African-American venirepersons and one against a white venireperson juror. There is no question, based on either precedent or common sense, but that the prosecutor's use of six of seven strikes against African-Americans constitutes a "disproportionate use of peremptory challenges." See, *e.g., Andrews*, 146 Ill. 2d at 430, 588 N.E.2d at 1136 (eight of eight peremptories used against blacks disproportionate); *People v. Gaston* (1992), 227 Ill. App. 3d 486, 489, 592 N.E.2d 131, 133-34 (four of five peremptories used against blacks found to constitute a disproportionate use of peremptories); *People v. Nicholson* (1991), 218 Ill. App. 3d 273, 283, 577 N.E.2d 1313, 1320 (five of seven strikes against blacks disproportionate amount).

The fourth factor which we consider, and one that our supreme court has found to be "highly relevant" (*Andrews*, 146 Ill. 2d at 431, 588 N.E.2d at 1136; *Hope*, 137 Ill. 2d at 465, 560 N.E.2d at 865), is whether the venirepersons excluded by the prosecutor were a heterogeneous group sharing race as their only common characteristic. In the case at bar, the evidence demonstrates that the excluded venirepersons shared the following two common traits besides being African-American: (1) six of the seven excluded venirepersons were women; and (2) all of the excluded members were unmarried. While we hold in part II of this opinion that the former characteristic (gender) is not a constitutionally permissible basis for excluding potential jurors, our supreme court has found the latter characteristic (marital status) to be an acceptable reason for peremptorily challenging venire members. (*Henderson*, 142 Ill. 2d at 289, 568 N.E.2d at 1244.) Accordingly, we find it "highly relevant" that the excluded venire members shared a common characteristic besides being of the same race.[3]

The fifth factor our supreme court has identified as important to

---

[3]Defendant contends that Judge Mannion "collapsed" the *Batson* hearing by allowing the prosecutor to articulate race-neutral explanations for his peremptory challenges at the *prima facie* stage. (See *Hernandez v. New York* (1991), 500 U.S. 352, 356, 114 L. Ed. 2d 395, 403, 111 S. Ct. 1859, 1864; *People*

establishing a *prima facie* determination is the level of African-American representation in the venire as compared to the jury. In this case, the percentage of African-Americans in the venire panel was approximately 32% (9 of 28), while the percentage of African-Americans on the petit jury was 23% (3 of 13). Our supreme court has identified such a 9% difference as "slightly *** suggest[ive] [of] purposeful discrimination." (*Henderson*, 142 Ill. 2d at 290-91, 568 N.E.2d at 1250.) Therefore, we likewise consider the percentage difference here only slight evidence of discriminatory intent by the prosecutor.

Another factor that the supreme court has consistently taken into consideration in determining whether a defendant has presented a *prima facie* case is the race of the defendant, the victim and the witnesses. Here, it is uncontested that defendant, the victim, and at least one of the witnesses who testified were African-Americans. The Illinois Supreme Court has stated that "in a case where both the defendant and victim are black, their racial characteristics do not warrant an inference, at the *prima facie* stage, that the prosecution discriminated against venire members who were black." *Henderson*, 142 Ill. 2d at 289, 568 N.E.2d at 1249.

Finally, in considering the remaining factors which the supreme court has occasionally found to be pertinent to a *prima facie* determination, we note first that in employing his knowledge of local conditions, Judge Mannion observed that the percentage of African-Americans in Cook County as a whole was almost identical to the percentage of African-Americans on the petit jury: 25% to 23%. The judge also stated, with respect to his experience with local prosecutors, that he had never known the assistant State's Attorney in this case to discriminate in his use of peremptory challenges on the basis of race.

Taking into consideration all of these facts, we hold that Judge Mannion's decision that defendant failed to establish a *prima facie* case of discrimination was not against the manifest weight of the evidence.

---

*v. Mitchell* (1992), 152 Ill. 2d 274, 289, 604 N.E.2d 877, 886.) Defendant's argument is without warrant. It is apparent from the record that the State was merely asserting that the evidence as to one of the factors our supreme court has found highly relevant to a *prima facie* case of racial discrimination, *i.e.*, the heterogeneity of the excluded venirepersons, militated against defendant's position.

## II

## A

### 1

Defendant also argues that the prosecutor in this case violated *Batson* by using his peremptory challenges to exclude women from the petit jury, an issue he has not raised heretofore in any of these proceedings. The State argues that *Batson* does not apply to gender-based discrimination, and that even if it does, defendant has waived such a claim by failing to raise it until this juncture in the case. Defendant urges us, in the event we find waiver, to notice any gender-based discrimination in the selection of his jury under the plain error provisions of Supreme Court Rule 615(a). 134 Ill. 2d R. 615(a).

■ Addressing the State's waiver argument first, it is clear that defendant has waived, for purposes of appeal, the issue of gender discrimination, for a defendant must both object to an alleged error at trial and bring the error to the attention of the trial court in a post-trial motion in order to preserve the issue for appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129-30.) Our supreme court has recently found it necessary to reiterate what it has invariably held in several previous cases: that a defendant's failure to object to a prosecutor's use of a peremptory challenge before the jury is sworn results in a waiver of a claim that the challenge was impermissibly exercised. (*Pecor*, 153 Ill. 2d at 125, 606 N.E.2d at 1135; accord *Henderson*, 142 Ill. 2d at 283, 568 N.E.2d at 1246; *People v. Andrews* (1989), 132 Ill. 2d 451, 457-58, 548 N.E.2d 1025, 1028; *Evans*, 125 Ill. 2d at 61-62, 530 N.E.2d at 1364.) As the court explained in *Andrews*: "[r]equiring a timely objection before the jury has been sworn and the venire dismissed allows a trial court to conduct a hearing while the chosen and stricken venirepersons are still present and before the trial has begun." (*Andrews*, 132 Ill. 2d at 457-58, 548 N.E.2d at 1028.) In *Pecor*, the court reaffirmed this principle, first espoused in *Evans*, stating:

> "[I]n *People v. Evans* (1988), 125 Ill. 2d 50[, 530 N.E.2d 1360], this court found that a defendant had waived the right to contest the State's peremptory challenge of a black juror by failing to object to that juror's challenge, even though the case was tried before *Batson* had been decided. In concluding this, the court noted that 'Batson requires that the defendant make a timely objection to the prosecutor's peremptory challenge. [Citations.]' We note that *Powers* requires that a defendant raise a 'legitimate and well founded objection[ ].' [Citation.] *** [D]efendants [in other cases] who made no objection whatsoever cannot now simply create claims and go back to the trial court and attempt to prove a *prima*

*facie* case of discrimination." *Pecor*, 153 Ill. 2d at 125-26, 606 N.E.2d at 1135.

As noted above, not until he brought the present appeal did defendant here object to any of the prosecutor's peremptory challenges on the ground that he was discriminating against venirepersons on the basis of gender. Accordingly, defendant has waived the issue.

## 2

We agree with defendant, however, that despite his waiver, the unique circumstances of this case qualify for our recognizing the gender discrimination issue under the "plain error rule." (134 Ill. 2d R. 615(a).) Generally, in criminal cases, that rule permits a reviewing court to consider an error not properly preserved for review when the evidence is closely balanced or the error is of such magnitude that the commission thereof denies the defendant a fair and impartial trial. (*People v. Shields* (1991), 143 Ill. 2d 435, 446, 575 N.E.2d 538, 543; *People v. Young* (1989), 128 Ill. 2d 1, 46-47, 538 N.E.2d 461, 471.) Since the waiver rule is one of administrative convenience rather than a jurisdictional bar (*People v. Smith* (1985), 106 Ill. 2d 327, 333, 478 N.E.2d 357, 360), we have the discretion to consider errors not properly preserved at trial (*People v. McCullum* (1977), 66 Ill. 2d 306, 315, 362 N.E.2d 307, 311; *People v. Beard* (1993), 263 Ill. App. 3d 1077, 1081; *People v. Knop* (1990), 199 Ill. App. 3d 944, 949, 557 N.E.2d 970, 973, *appeal denied* (1990), 135 Ill. 2d 562, 564 N.E.2d 843; *People v. Burrows* (1989), 183 Ill. App. 3d 949, 956, 539 N.E.2d 842, 846), and we may invoke the plain error rule *sua sponte. People v. Davis* (1991), 145 Ill. 2d 240, 251, 582 N.E.2d 714, 719.

Our supreme court recently had cause to do exactly what we do here today when it employed the plain error rule in order to consider a challenge based on *Batson*, a claim which the defendant had indisputably waived in the circuit court. In *People v. Hudson* (1993), 157 Ill. 2d 401, 425, now Chief Justice Bilandic, writing for the majority of the court, rejected the State's argument that the defendant's failure to preserve his *Batson* claim precluded review of the issue, explaining:

> "[T]his court has long recognized that 'the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system.' [Citations.] In light of the importance of the constitutional claim raised by defendant, we choose to review [his *Batson* claim] in the interest of justice."

Although *Hudson* is the first instance in which our supreme court excused a defendant's waiver of an alleged *Batson* violation, that de-

cision is not a radical course change for the court, but rather represents merely a logical extension of the holdings in other cases in which it considered waived arguments that addressed alleged denials of vital constitutional protections. (See *People v. Lucas* (1992), 151 Ill. 2d 461, 490, 603 N.E.2d 460, 473 (invoking plain error rule to review the defendant's waived claim that he was denied his sixth amendment right to fully cross-examine State's witnesses); *People v. Chandler* (1989), 129 Ill. 2d 233, 242, 543 N.E.2d 1290, 1293 (invoking plain error to review the defendant's constitutional claim of ineffective assistance of counsel which was not properly preserved for appeal).)[4] The same fundamental constitutional concerns encountered in *Hudson* are raised by defendant on appeal, albeit waived in both cases. Accordingly, consistent with *Hudson*, we exercise our authority to disregard his waiver and instead choose to consider defendant's contentions respecting the State's allegedly gender-biased use of peremptory challenges.[5]

Moreover, as we discuss in part B of this opinion, because we find that gender-based discrimination in selecting a jury disgracefully impugns the integrity of the judicial process, the imposition of plain error in the instant case is all the more proper. *Henderson*, 142 Ill. 2d at 311, 568 N.E.2d at 1259 (plain error may apply if "remedying the error is 'necessary to preserve the integrity of the judicial process' ")

---

[4]In addition, we further note that *Hudson* simply affirms a prevalent practice in this court where we have consistently recognized that, like other claims on appeal, *Batson* challenges are amenable to plain error analysis. *E.g., Beard*, 263 Ill. App. 3d at 1079; *People v. Batchelor* (1990), 202 Ill. App. 3d 316, 321-22, 559 N.E.2d 948, 952, *appeal denied* (1990), 135 Ill. 2d 559, 564 N.E.2d 840; *People v. Lott* (1990), 196 Ill. App. 3d 967, 972, 554 N.E.2d 569, 572, *appeal denied* (1990), 132 Ill. 2d 551, 555 N.E.2d 382; *People v. Mitchell* (1987), 163 Ill. App. 3d 58, 69, 516 N.E.2d 500, 507, *appeal denied* (1988), 119 Ill. 2d 567, 522 N.E.2d 1252, *People v. Brown* (1987), 152 Ill. App. 3d 996, 998-99, 505 N.E.2d 397, 398; accord *Ex parte Adkins* (Ala. 1992), 600 So. 2d 1067, 1068-69; *State v. Davis* (Mo. App. 1992), 830 S.W.2d 469, 472.

[5]The dissent scolds us for invoking the plain error rule to address an issue which is different from the precise one for which we previously remanded this cause. However, we find no fundamental difference between a gender-based *Batson* claim and one based on race, for both clearly and precisely pertain to the issue of impermissible discrimination in the jury selection process. More important, however, it was the State, during the *Batson* hearing on remand, that introduced the gender-discrimination issue into this case in seeking to justify its use of peremptory challenges against African-Americans, pointing out that the rejected venirepersons shared the common characteristic of being women. We are simply saying that the State may not run with the hares and the hounds at one and the same time.

quoting *People v. Herrett* (1990), 137 Ill. 2d 195, 210, 561 N.E.2d 1, 17); see *Young*, 128 Ill. 2d at 46-47, 538 N.E.2d at 471 (purpose of plain error rule is to "protec[t] and preserv[e] the integrity and reputation of the judicial process").

Although our supreme court held in *Evans* that a defendant waives his right to make a *Batson* claim where he does not object to the exclusion of the potential juror during trial even though *Batson* had not yet been decided, we are indeed faced with a quite different situation here. Defendant's trial was in 1985, before *Batson, Powers*, and most important, any decision was handed down that even hinted that gender-discrimination concerns were implicated in the jury selection process. Had this or any other defendant objected to the State's use of its peremptory challenges to exclude venire members on account of their gender before those cases were decided, such a motion would sadly have been considered to be frivolous, if not, indeed, derisive, as no controlling authority existed at that time to support it.

Our supreme court recognized as much in *Pecor*, where it rejected the State's argument that by not preserving the record for review, the defendant had waived his *Batson* claim based on the facts that he was white and that the excluded potential jurors were African-American. The *Pecor* court, after noting that *Powers* had not yet been decided at the time of the defendant's trial, stated:

> "This was an instance where the law was clear: defendant could not raise the *Batson* claim because he had no standing to do so. Any attempt to make a record here, or persist in his claim where the law was clearly to the contrary, would have been, at the time, a waste of resources. *We do not believe a defendant should have to anticipate an eventual change in the law in order to preserve an issue for review. Such a rule would require defendants to burden the courts with requests to make records of assertions where the law provided specifically that they had no such claim. Such a process would overly burden the courts, resulting in substantial delay and injustice.*" (Emphasis added.) *Pecor*, 153 Ill. 2d at 121, 606 N.E.2d at 1133-34.

Accord *Coleman*, 155 Ill. 2d at 518, 617 N.E.2d at 1206 ("At the time defendant was tried, he could not bring a [*Batson*] claim because the law provided otherwise, despite any awareness of what was then expected to bring a claim").

The reasoning employed by the supreme court in *Pecor* and *Coleman* applies with equal force here. It surely would have been an obvious waste of judicial resources for defendant to object to the exclusion of women from the petit jury in his trial in 1985, since

clearly there would have been no basis whatsoever in law for it. Accordingly, in the exercise of our discretion to consider errors not properly preserved at trial (see *McCullum*, 66 Ill. 2d at 315, 362 N.E.2d at 311), we hold that the magnitude of the constitutional rights implicated in *Batson*, the effect gender discrimination has on the integrity of our court system, as well as fundamental fairness require us to excuse defendant's waiver and recognize his gender-based *Batson* claim.

■ We also hold that defendant has standing to raise his gender-discrimination claim. As stated above, in *Powers*, the Supreme Court held that a criminal defendant has standing to raise the equal protection rights of a potential juror who was improperly excluded even if the defendant is not of the same racial group as the excluded venireperson. (*Powers*, 499 U.S. at 402, 113 L. Ed. 2d at 419, 111 S. Ct. at 1366; see *De Gross*, 960 F.2d at 1436.) Our supreme court has interpreted *Powers* to mean that a defendant need only raise an inference that the prosecutor used his peremptory challenges in a racially discriminatory manner; the fact that the races of the defendant and the excluded juror are different does not preclude him from raising a *Batson* challenge. (*Andrews*, 146 Ill. 2d at 424, 588 N.E.2d at 1133.) Further, the court has recently held that *Powers* is retroactively applicable to all cases on direct review. (*Pecor*, 153 Ill. 2d at 126, 606 N.E.2d at 1136.) The principles enunciated in *Powers*, then, clearly apply in a gender-discrimination context as well.

Much of the dissent is devoted to its belief that the United States Supreme Court's analysis in *United States v. Olano* (1993), 507 U.S. 725, 123 L. Ed. 2d 508, 113 S. Ct. 1770, of Rule 52(b) of the Federal Rules of Criminal Procedure (Fed. R. Crim. P. 52(b)), is fully applicable to the Illinois equivalent contained in Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). We disagree, for it is important to note that the jurisdiction of our appellate court is bestowed upon it by our constitution (Ill. Const. 1970, art. VI, § 6; see also *Hamilton Corp. v. Alexander* (1972), 53 Ill. 2d 175, 290 N.E.2d 589 (reasoning that since the jurisdiction of the Illinois Appellate Court was provided by constitution, it could not be legislatively altered)), while the jurisdiction of the Federal courts of appeals is granted to them by Congress, which does so via its power "[t]o constitute Tribunals inferior to the Supreme Court."[6] (U.S. Const., art. I, § 8, cl. 9.) As a consequence, procedural rules promulgated by Congress, such as

---

[6]It is also interesting to note that until the adoption of the 1962 Judicial Article amending the 1870 Constitution, the Appellate Court of Illinois, like the Federal intermediate courts, was a creature of the legislature, and the

Rule 52, are mandatory precepts controlling the conduct and the power of those courts. As the United States Supreme Court has noted in this precise context, "Rule 52 is, in every pertinent respect, as binding as any statute duly enacted by Congress, and [F]ederal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional *** provisions." *Bank of Nova Scotia v. United States* (1988), 487 U.S. 250, 255, 101 L. Ed. 2d 228, 237, 108 S. Ct. 2369, 2373-74.

Rule 52 describes those instances when, if at all, a Federal appellate court may forgive a defendant's waiver of an error committed at trial. In the absence of full compliance with that rule, any error not properly preserved cannot be considered by the reviewing court. Thus, under the Federal approach, waiver (or more precisely forfeiture) of most trial errors imposes limitations on the court of appeals' ability to correct or even to consider the error, as well as limiting the ability of the defendant to complain about it. Both will be silenced unless "[t]he forfeited error *** is 'plain' and 'affect[s] substantial rights.' " *Olano*, 507 U.S. at 732, 123 L. Ed. 2d at 518, 113 S. Ct. at 1777.

In contrast, under Illinois law, waiver poses no impediment to our consideration of errors made at trial. By this time, it has become rather common for our reviewing courts to say what we have previously stated, *i.e.*, that "[t]he waiver rule is one of administrative convenience rather than jurisdiction" (*People v. Smith* (1985), 106 Ill. 2d 327, 333, 478 N.E.2d 357, 360; accord *Leone v. City of Chicago* (1993), 156 Ill. 2d 33, 41, 619 N.E.2d 119, 123 (Miller, C.J., dissenting); *People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239; *People v. Torres* (1993), 252 Ill. App. 3d 567, 623 N.E.2d 1029; *People v. Hayes* (1977), 54 Ill. App. 3d 617, 370 N.E.2d 68), a legal principle which has no counterpart in the Federal court system. It has been recognized in this State that the waiver rule is addressed only to the parties and serves to warn them that, except in limited instances, if they fail to properly preserve an issue, they are not entitled to appellate review of it. (*People v. Lowe* (1992), 153 Ill. 2d 195, 606 N.E.2d 1170; see also *People v. Walsh* (1981), 101 Ill. App. 3d 1146, 1149, 428 N.E.2d 937, 940 ("The waiver rule, however, is not a limitation upon the reviewing court but an admonition to the parties").) This view of waiver explains the "plain error rule" quotation taken by the dissent from *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227. The *Precup*

---

contours of its jurisdiction depended upon legislative grant. See *Scott v. Freeport Motor Casualty Co.* (1942), 379 Ill. 155, 39 N.E.2d 999; *Gallagher v. People* (1904), 207 Ill. 247, 69 N.E. 962.

court, by using the cited language, was not rebuking the appellate court for entertaining an issue which had been waived and which did not meet *Olano*'s standard for plain error, but rather was advising the defendant why it declined, in its discretion, to consider an alleged error which had not been preserved for appeal.

The supreme court, in promulgating the provisions of Rules 366(a) and 615(a) (134 Ill. 2d Rules 366(a), 615(a)), has granted us the authority we need to excuse defendant's waiver of this issue and reach its merits. In *Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831, the court found that the appellate court properly resolved a dispute before it by means of a defense which had not been presented by the defendant. In the supreme court the plaintiff challenged that judgment, arguing that the appellate court was powerless to grant this remedy since it had not been asserted by the defendants. The court rejected the plaintiff's contention and held that Rule 366(a) or Rule 615(a), its functional equivalent in criminal appeals, empowered the reviewing court "to override the considerations of waiver that stem from the adversary character of our system," in order to achieve its paramount "responsibility *** for a just result and for the maintenance of a sound and uniform body of precedents." *Hux*, 38 Ill. 2d at 225, 230 N.E.2d at 832; see also *People v. McAdrian* (1972), 52 Ill. 2d 250, 253, 287 N.E.2d 688, 690 ("[The waiver] rule has not been universally applied[, for t]here are matters and rights which are so fundamental that they must be considered, whenever initially raised").

In *Norberg v. Centex Homes Corp.* (1993), 247 Ill. App. 3d 267, 616 N.E.2d 1342, we invoked Rule 366(a) and *Hux* to reach the waived yet important question of whether our supreme court's decision in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023, was to be applied either retroactively or prospectively, even though we realized that the rule would be used to set, as opposed to maintain, precedent. Nevertheless, we did so because we considered the issue in desperate need of an answer. In the case at bar, we are confronted with an issue which, it is to be hoped, is at least as important as that in *Norberg*, *i.e.*, whether we as a State are willing to recognize that women are entitled to full participation in our society and, in this case, that they will not be denied the right to serve as jurors, one of the most basic and essential rights and duties of a citizen, solely on the basis of their gender. We should not be deterred from vindicating this vital right of women merely because the issue was not presented in the hypertechnical legal package the dissent thinks necessary. Therefore, in the interests of justice, we exercise

the power given us by Rule 615(a) as interpreted by *Hux* and reach the question presented for our review.[7]

## B

In addressing the merits of defendant's gender-based *Batson* argument, we first note that while neither the United States Supreme Court nor the Illinois Supreme Court has decided as yet whether the Federal Constitution prohibits gender as well as racial discrimination in the use of peremptory challenges,[8] several courts around the nation have addressed the issue and have reached divergent results.[9] Compare *United States v. De Gross* (9th Cir. 1990), 913 F.2d 1417 (*Batson* applies to gender discrimination), *aff'd on reh'g en banc* (9th Cir. 1992), 960 F.2d 1433; *Di Donato v. Santini* (1991), 232 Cal. App. 3d 721, 283 Cal. Rptr. 751 (same); *State v. Levinson* (1990), 71 Haw. 492, 795 P.2d 845 (same); *Tyler v. State* (1993), 330 Md. 261, 623 A.2d 648 (same); *Commonwealth v. Hyatt* (1991), 409 Mass. 689, 568 N.E.2d 1148 (same); *State v. Gonzales* (App. 1991), 111 N.M. 590, 808 P.2d 40 (same); *People v. Blunt* (1990), 162 A.D.2d 86, 561 N.Y.S.2d 90 (same); *City of Mandan v. Fern* (N.D. 1993), 501 N.W.2d 739 (same); *State v. Burch* (1992), 65 Wis. App. 828, 830 P.2d 357 (same), with *United*

---

[7]Even in the absence of *Hux* as precedential authority, we would nevertheless be compelled to decide this case no differently than we do here; and we would further respond to the dissenter's constrictive implementation of waiver by bringing to his attention the sagacity of Spain's greatest twentieth century poet Antonio Machado, who wrote:
"Caminante, no hay camino,
se hace camino al andar.
Al andar se hace camino."
which, translated, instructs:
"Wayfarer, there is no way,
you make the way as you go.
As you go, you make the way."
Proverbios y cantares (Proverbs and Song Verses) *reprinted in* Selected Poems of Antonio Machado 142-43 (Alan B. Trueblood trans. 1982).

[8]The Court has recently granted a writ of *certiorari* to determine whether *Batson* applies to gender-based discrimination. *J.E.B. v. State* (Ala. App. 1992), 606 So. 2d 156, *cert. granted* (1993), 508 U.S. 905, 124 L. Ed. 2d 242, 113 S. Ct. 2330.

[9]Our recent holding that *Batson* applies to gender-based discrimination in *People v. Mitchell* (1992), 228 Ill. App. 3d 917, 593 N.E.2d 882, was not upheld by our supreme court (*People v. Mitchell* (1993), 155 Ill. 2d 344, 614 N.E.2d 1213), because it held that it was unnecessary for us to reach that constitutional question, as the cause could have been determined on other grounds. *Mitchell*, 155 Ill. 2d at 356-57, 614 N.E.2d at 1218.

*States v. Broussard* (5th Cir. 1993), 987 F.2d 215 (*Batson* does not apply to gender discrimination); *United States v. Hamilton* (4th Cir. 1988), 850 F.2d 1038 (same); *Ex Parte Murphy* (Ala. 1992), 596 So. 2d 45 (same); *Tucker v. State* (1993), 313 Ark. 624, 855 S.W.2d 948 (same) *overruled on other grounds by Missildine v. State* (1993), 314 Ark. 500, 863 S.W.2d 813; *Hannan v. Commonwealth* (Ky. App. 1989), 774 S.W.2d 462 (same); *State v. Adams* (La. Ct. App. 1988), 533 So. 2d 1060 (same); *State v. Pullen* (Mo. App. 1991), 811 S.W.2d 463 (same); *State v. Culver* (1989), 233 Neb. 228, 444 N.W.2d 662 (same); *State v. Oliviera* (R.I. 1987), 534 A.2d 867 (same).

■ We agree with those decisions which have held that *Batson* applies to gender-based discrimination, for we find that a defendant's right to be tried before a jury chosen free of gender discrimination is no less important than his right to be tried before jurors who are chosen free of racial discrimination; the equal protection clause is offended by both forms of exclusion. Indeed, one must wonder what vitality the equal protection clause retains if it is to be read to countenance the deliberate manipulation of our criminal justice system by allowing litigants to exclude venirepersons from jury service on the basis of either race *or* gender. Since "[c]ompetence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial" (*Batson*, 476 U.S. at 87, 90 L. Ed. 2d at 81, 106 S. Ct. at 1718), we fail to apprehend the relevance of a person's gender to his or her fitness to serve as a juror, a subject more appropriately consigned to courthouse folklorists.

It needs no suffragette come from the grave to remind us that the history of our jury system has been marked by the continual, systematic, pervasive, and, more sadly, State-sanctioned exclusion of women.

> "At common law, women were excluded from juries based on the doctrine of *propter defectum sexus*, literally, the 'defect of sex.' 2 William Blackstone, Commentaries *362. In 1880, the Supreme Court declared the exclusion of blacks from jury service to be unconstitutional, but noted that such service might be limited to men. (*Strauder v. West Virginia* (1880), 100 U.S. 303, 310, 25 L. Ed. 664, 666.) In *Hoyt v. Florida* (1961), 368 U.S. 57, 82, 7 L. Ed. 2d 118, 122, 82 S. Ct. 159, 162, the Supreme Court held that excluding women from jury service was neither a due process nor an equal protection violation because there was a rational basis for it—that women are 'still regarded as the center of home and family life.' *Id.* at 82. It was not until 1975 that the Supreme Court held that systematically excluding women from juries violates defendants' Sixth Amendment rights. *See Taylor [v. Louisiana* (1975), 419 U.S.

522, 530-31, 42 L. Ed. 2d 690, 698, 95 S. Ct. 692, 698.]" *United States v. De Gross* (9th Cir. 1992), 960 F.2d 1433, 1438 (holding unconstitutional both the female defendant's use of a peremptory challenge of a male juror and the prosecution's peremptory challenge of a female juror).

Government-condoned exclusion of women from jury service was by no means endemic to United States Supreme Court jurisprudence. For example, even after they had gained the right to vote, following a long and arduous campaign that led to the ratification of the nineteenth amendment to the United States Constitution, women were still being barred from serving on juries on the ground "that the word 'electors,' as used in the statute [providing for the appointment of a jury commission and the making of jury lists] means male persons, only, and the petitioner was not entitled to have her name replaced upon the jury list of Cook county." *People ex rel. Fyfe v. Barnett* (1925), 319 Ill. 403, 410, 150 N.E. 290, 292; accord *Commonwealth v. Welosky* (1931), 276 Mass. 398, 177 N.E. 656.

When the barons wrested it anew from King John on the meadow at Runnymede, the provision of the 39th clause of the Magna Carta was already ancient law: that "no freeman shall be arrested or imprisoned *** except by the lawful judgment of his peers," a precept that has been regarded as the indefeasible right of all Americans since long before we attained nationhood. Unless we are now to revert to that aberrant period in our history when our courts were holding that the term " 'peers' means male jurors, only," (*Fyfe*, 319 Ill. at 410, 150 N.E. at 292), we cannot suffer a State-condoned practice of allowing litigants to exclude venirepersons from jury service on the basis of gender.

Furthermore, gender discrimination in the context of jury selection is more pernicious under our State Constitution than it is under *Batson* and the body of case law that it has generated. The equal protection clause contained in the 1970 Illinois Constitution provides:

"The equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts." Ill. Const. 1970, art. I, § 18.

In *People v. Ellis* (1974), 57 Ill. 2d 127, 311 N.E.2d 98, our supreme court delineated the scope of that clause as follows:

"In contrast to the Federal Constitution, which, thus far, does not contain the Equal Rights Amendment, the Constitution of 1970 contains section 18 of article I, and in view of its explicit language, and the debates, we find inescapable the conclusion that it was intended to supplement and expand the guaranties of the equal

protection provision of the Bill of Rights and requires us to hold that a classification based on sex is a 'suspect classification' which, to be held valid, must withstand 'strict judicial scrutiny.' " (*Ellis*, 57 Ill. 2d at 132-33, 311 N.E.2d at 101.)

It bears emphasizing, then, that under our State Constitution, gender-based classifications are accorded a higher level of scrutiny than they receive under the fourteenth amendment of the United States Constitution.

We also find that gender discrimination in jury selection impugns the integrity of the judicial process, for the reason that *Batson* implicates not only the defendant's right to be tried before a jury chosen free of sex discrimination, but also the right that eligible venirepersons have to serve as jurors, whatever their gender, and that the societal interest in both of these rights is equally vital to the proper functioning of our criminal justice system. Nowhere is the concern that discrimination in the courtroom raises questions about the integrity of our system of justice brought out more forcefully than in *Powers v. Ohio* (1991), 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364, where the Court held that a prosecutor's discriminatory use of peremptory challenges harms not only the defendant and the excluded jurors, but the community at large as well. (*Powers*, 499 U.S. at 402, 113 L. Ed. 2d at 419, 111 S. Ct. at 1368.) Justice Kennedy explained:

"The opportunity for ordinary citizens to participate in the administration of justice has long been recognized as one of the principal justifications for retaining the jury system. [Citations.]
***
'The jury system postulates a conscious duty of participation in the machinery of justice ... One of its greatest benefits is in the security it gives the people that they, as jurors actual or possible, being part of the judicial system of the country can prevent its arbitrary use or abuse.' [Citation.]

* * *

Jury service preserves the democratic element of the law, as it guards the rights of the parties and insures continued acceptance of the laws by all of the people. [Citation.] It 'affords ordinary citizens a valuable opportunity to participate in a process of government, an experience fostering, one hopes, a respect for the law.' [Citation.] Indeed, with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process." *Powers*, 499 U.S. at 406-07, 113 L. Ed. 2d at 422-23, 111 S. Ct. at 1368-69.

Accord *Batson*, 476 U.S. at 87, 90 L. Ed. 2d at 81, 106 S. Ct. at 1718;

see also *Georgia v. McCollum* (1992), 505 U.S. 42, 49-50, 120 L. Ed. 2d 33, 45, 112 S. Ct. 2348, 2354 ("[I]f a court allows jurors to be excluded because of group bias, it is a willing participant in a scheme that could undermine the very foundation of justice—our citizens' confidence in it").

Based on the foregoing analysis, we conclude that *Batson* applies to gender discrimination in the selection of a jury; moreover, we recognize defendant's gender *Batson* claim here because, if proved, it is an error of such extent under the Illinois and the United States Constitutions that it not only causes a defendant cognizable injury, but it also harms the excluded jurors, whose gender comprises at least half of all eligible persons in our State, by depriving them of a significant opportunity to participate in public life, casts doubt on the integrity of the judicial process, and places the fairness of the criminal proceeding, indeed, of the criminal justice system itself, in doubt.

## C

The final question pertinent to defendant's gender discrimination claim under *Batson* is whether a remand for a new hearing is necessary. The facts here illustrate that although four women served on the petit jury, six of the seven venirepersons excluded by the State were women. Furthermore, the State itself pointed out, while refuting the defendant's racial discrimination claim, that five of the six excluded African-Americans were women. However, there also existed another heterogeneous characteristic of the stricken venirepersons: each was unmarried. In light of this evidence in the record, we find remandment necessary in order to give defendant the opportunity to establish a *prima facie* case, if he can, of gender discrimination in the State's use of its peremptory challenges, and if such a case is made, the State be given the opportunity to advance gender-neutral reasons, if any it has, for excusing the venirepersons in question. See *Coleman*, 155 Ill. 2d at 518, 617 N.E.2d at 1206 (refusing to decide *Batson* claim on record before it and instead remanded for *Batson* hearing because purpose of retroactive application of *Batson* is to provide a defendant with an opportunity to make a record and establish a *prima facie* case of discrimination under factors implicated in a *Batson* analysis).

For all of the foregoing reasons, we affirm the trial court's determination that defendant failed to present a *prima facie* case of racial discrimination under *Batson*. However, we remand the cause to the trial court to conduct a *Batson* hearing in order to determine whether the State improperly exercised its peremptory challenges to exclude women from the petit jury.

Affirmed in part; remanded with instructions.

McCORMICK, J., concurs.

PRESIDING JUSTICE DiVITO, concurring in part and dissenting in part:

I agree with the majority that the circuit court's determination that defendant failed to establish a *prima facie* case of racial discrimination in the State's use of its peremptory challenges was not against the manifest weight of the evidence. I do not agree, however, with the majority's decision to invoke the plain error exception to the waiver rule in this case, and to remand for a hearing to determine whether there was error, even though in a proper case I would extend *Batson* to gender-based discrimination.[10] Therefore, I must respectfully dissent from that portion of the majority's opinion.

## I

Illinois courts have always required that both the "plain" and the "error" limitations on plain error application be satisfied. (*E.g.*, *People v. Precup*, 73 Ill. 2d at 17, 382 N.E.2d at 231 ("Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed").) The majority does not make a finding that "error" occurred here and, of course, it cannot proclaim as "plain" an error it has not found. Thus, despite its "plain error" analysis, the majority, having found no plain error, remands the matter to the circuit court for its determination of whether error occurred and, presumably, whether that error was plain. This result cannot be justified by the plain error exception to the waiver doctrine.

Indeed, the majority's decision represents an unprecedented and undue expansion of the plain error exception. My research has not disclosed one Illinois case that invokes the plain error rule, as the majority does here, not to declare that error has occurred and that reversal or remand for a new trial is mandated, but to remand for the very purpose of determining *whether* error occurred.

---

[10] As my concurrence in *Mitchell* should make plain, I believe that gender discrimination in the selection of jurors violates both the State and the Federal constitutional guarantees of equal protection. Our supreme court recently vacated "that part of the judgment of the appellate court *** prescribing the procedure to be followed upon retrial in the event of a motion for a *Batson* hearing premised upon gender-based exclusion of [potential] jurors" (*Mitchell*, 155 Ill. 2d at 356-57), which it quoted, but the court did not express dissatisfaction with the substance of our reasoning and conclusions.

In *United States v. Olano* (1993), 507 U.S. 725, 123 L. Ed. 2d 508, 113 S. Ct. 1770, while noting that a constitutional or any other right may be forfeited by the failure to timely assert the right, the United States Supreme Court provides significant guidance for appellate review of claims based upon plain error. The Court's discussion is fully applicable to Illinois plain error analysis, for it interprets and applies Rule 52 of the Federal Rules of Criminal Procedure, which is identical to the plain error provisions that apply to this case through Illinois Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). In *Olano*, the Court emphasizes that a reviewing court's authority created by plain error principles is circumscribed by three limitations: "There must be an 'error' that is 'plain' and that 'affect[s] substantial rights.' " (*Olano*, 507 U.S. at 732, 123 L. Ed. 2d at 518, 113 S. Ct. at 1776.) After pointing out that "plain" is synonymous with "clear" or "obvious," the Court states, "[a]t a minimum, [a reviewing court] cannot correct an error pursuant to [the plain error rule] unless the error is clear under current law." *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 519, 113 S. Ct. at 1777.

The majority opinion here, through constitutional interpretation, announces a rule prohibiting gender discrimination in the selection of juries in Illinois. It is obvious that what is first announced in this opinion cannot be said to have been the "current law." Thus, what the United States Supreme Court has characterized as a minimum requirement for plain error analysis is lacking.

Moreover, the majority's plain error analysis is fundamentally flawed because it ignores both the "error" and the "plain" limitations on its review powers, focusing instead on the "substantial rights" limitation. Thus it justifies its application of plain error by reasoning that our courts have never specifically rejected it in *Batson* situations and by stressing the important values compromised by gender discrimination in jury selection. In doing so, the majority ignores the relevant admonition of our supreme court: "Rule 615(a) does not operate in the nature of a general savings clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court." *Precup*, 73 Ill. 2d at 16; reiterated in *People v. Herrett* (1990), 137 Ill. 2d 195, 215-16, 561 N.E.2d 1, 10-11.

Had there been a sufficient basis to find a *prima facie* case of gender discrimination in the record, remand certainly would be proper. In that case, the remand would not be to find error; this court would already have found a *prima facie* case of error, and the remand would be for the purpose of allowing the prosecution to articulate gender-neutral reasons for its peremptory challenges of women.

Without such a finding, however, the majority's logic is flawed. I cannot concur with a decision to remand in order to discover whether error has occurred, when the majority does so under the plain error exception to the waiver doctrine.

## II

After correctly deciding that defendant waived (or forfeited)[11] his right to raise this gender discrimination claim, the majority justifies its version of the plain error exception by asserting that "unique circumstances" compel its conclusions. I respectfully disagree.

The "unique circumstances" are that the trial at issue was held one year before *Batson* was decided in 1986 and that in 1985, "[no] decision was handed down that even hinted that gender-discrimination concerns were implicated in the jury selection process." (261 Ill. App. 3d at 468.) The majority goes on to suggest that "[h]ad this or any other defendant objected to the State's use of its peremptory challenges to exclude venire members on account of their gender before [*Batson* and *Powers*] were decided, such a motion would sadly have been considered to be frivolous, *** as no controlling authority existed at that time to support it." (261 Ill. App. 3d at 468.) The majority then concludes that "[i]t surely would have been an obvious waste of judicial resources for defendant to object to the exclusion of women from the petit jury in his trial in 1985." (261 Ill. App. 3d at 468.) The majority, however, is silent about defendant's having overlooked the opportunity to raise this point at his 1990 *Batson* hearing, by which time the issue certainly was no longer novel. (*United States v. De Gross* (9th Cir. 1990), 913 F.2d 1417, 1423

[11]Justice Ryan, specially concurring with the Illinois Supreme Court's decision in *People v. Free* (1988), 122 Ill. 2d 367, 522 N.E.2d 367, *cert. denied* (1988), 488 U.S. 872, 102 L. Ed. 2d 159, 109 S. Ct. 190, distinuishes between the term "waiver" and the term used by the majority in that case, "procedural default." "Waiver is an intelligent relinquishment of a known right o[r] a privilege. [Citation.] Procedural default, on the other hand, relates to a failure by counsel to comply with certain procedural requirements which results in the forfeiture of the right to raise error on appeal." (*Free,* 122 Ill. 2d at 379 (Ryan, J., specially concurring).) Our courts have long used the term "waiver" when perhaps "forfeiture" might have been more accurate. For that reason, in this dissent, like the majority, I use the term "waiver" as synonymous with "forfeiture."

The United States Supreme Court in *Olano* also distinguishes between "waiver" (the "intentional relinquishment or abandonment of a known right") and "forfeiture" (the "failure to make the timely assertion of a right"). *Olano,* 507 U.S. at 733, 123 L. Ed. 2d at 519, 113 S. Ct. at 1777.

(extending *Batson* to a defendant's gender discrimination in selecting the jury at his 1987 trial); *United States v Hamilton* (4th Cir. 1988), 850 F.2d 1038, 1043 (declining to extend *Batson* when government gave as its race-neutral reason for having struck female jurors at a pre-*Batson* trial that it wanted men), *cert. denied* (1990), 493 U.S. 1069, 107 L. Ed. 2d 1017, 110 S. Ct. 1109; *United States v. Broussard* (5th Cir. 1993), 987 F.2d 215 (same).) At least one State court had considered the question as early as 1982. *State v. Ucero* (R.I. 1982), 450 A.2d 809.

I believe the majority errs in holding that a newly announced rule of constitutional dimension may be applied to a case pending on direct review, even if the defendant did not raise the issue at trial. The majority cites no cases in which a court has permitted a defendant to invoke such a newly announced rule without having voiced an objection during the proceeding from which appeal was taken. Not even in *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, in which the United States Supreme Court determined that *Batson* should apply retroactively to cases pending on direct appeal at the time *Batson* was announced, did the Court state, or even imply, that its ruling would apply when a defendant had not raised a discrimination claim at trial.

Here, neither during his trial nor in his post-trial motion did defendant challenge the State's use of its peremptory challenges to exclude women from the petit jury. He uttered not a murmur when, at the *Batson* hearing in 1990, the assistant State's Attorney, who had not participated in the trial, effectively invited such an objection with the candid observation that the trial prosecutor "for whatever reason, *** in this case found it advantageous or desireable to have males on this jury." Under these "unique circumstances," our review under the plain error exception to the waiver doctrine is unwarranted.

## III

Although I agree that in a proper case this court may invoke the plain error rule *sua sponte*, I question the propriety as well as the wisdom of entertaining defendant's claim when the determination from which he is appealing is not the original *voir dire* but only the circuit court's finding that he failed to present a *prima facie* case that the State used its peremptory challenges to improperly exclude African-Americans from the jury. The majority apparently believes that any issue of constitutional import arising at the trial is fair game for our careful scrutiny at this time. It cites no support, however, for the proposition that a reviewing court's reach extends

to questions different from those the circuit court determined on the remand, thereby permitting a defendant to get a "second bite of the apple" on review after remand.[12] This case does not justify such a ruling.

## IV

Some additional observations concerning that portion of the majority's holding with which I disagree are in order.

The majority's reliance on our supreme court's holding in *Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831, is puzzling. In that case, the supreme court rejected a party's contention that the appellate court had relied upon an argument not presented to it. In so doing, the supreme court had no occasion to overlook waiver in resolving the central issue in the case. The waiver language quoted by the majority was used merely to justify its holding that a reviewing court may overlook the provisions of Supreme Court Rule 341(e)(7), a rule addressing one's ability to raise waived points in a reply brief, a far cry from the type of waiver involved in this case. Moreover, although the quoted language from *Hux* is ostensibly consistent with its views, the majority fails to take note of the following cautionary language in that case:

> "There are limitations [to a reviewing court's ability to override considerations of waiver]. '[A]n appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at the trial.' [Citation.] In exercising the power care should be taken that the litigants are not deprived of an opportunity to present argument." *Hux*, 38 Ill. 2d at 225.

In disregarding the waiver that it concedes occurred in this case, the majority stresses that " '[t]he waiver rule is one of administrative convenience rather than jurisdiction.' " (261 Ill. App. 3d at 470, quoting *Smith*, 106 Ill. 2d at 333, 478 N.E.2d at 360.) What the majority neglects to point out, however, is that the quoted principle is the

---

[12] The procedural posture of this appeal, *i.e.*, a separate appeal from the hearing after remand, is unusual. Nine months after our first opinion in this case, the supreme court explained that when remanding for a *Batson* hearing, the appellate court should retain jurisdiction as Rule 615(b) (134 Ill. 2d R. 615(b)) allows, issuing its opinion after the hearing. (*People v. Garrett* (1990), 139 Ill. 2d 189, 194-95, 564 N.E.2d 784, 787.) Even if we had retained jurisdiction while remanding for the *Batson* hearing, I believe that only issues arising from that hearing could be newly raised. See, *e.g.*, *People v. Jones* (1989), 185 Ill. App. 3d 208, 544 N.E.2d 161 (supplemental opinion after remand).

underpinning for our review of plain error; it does not justify a search for any error or, as the majority regrettably does here, a remand to determine whether error occurred. Indeed, some self-imposed limitation on our review power is advisable; prudence dictates caution in overriding well-established waiver principles, except in genuine plain-error situations. We must be mindful of the premise upon which the waiver doctrine is based: the need to call alleged error to the attention of one's adversary and the trial court so that remedial measures might be taken at the circuit court level. We should also recognize that the waiver doctrine effectively encourages competency of members of the trial bar, while our willingness to ignore waiver fosters unprofessionalism and rewards ineptness. Most significantly, such willingness requires appellate counsel in criminal cases to pursue waived issues, lest claims of ineffective assistance of counsel be lodged against them, for at any time a reviewing court might do what the majority does here.

In responding to what it refers to as my desire for a "hypertechnical legal package" and my "constrictive implementation of waiver," the majority quotes the Spanish poet Antonio Machado. (261 Ill. App. 3d at 472 n.7.) The majority's revelational choice of quotation underlies its statement that "[e]ven in the absence of *Hux* as precedential authority, we would *** be compelled to decide this case no differently than we do here." (261 Ill. App. 3d at 472 n.7) I reject the notion that "you make the way as you go" can be a proper principle for appellate review. If it were, it would devour all of the firmly established principles that properly temper our review authority.

Although I share the majority's fervor regarding the unacceptability of gender discrimination in jury selection, I do not share its belief that the mere possibility of gender discrimination is so offensive that, regardless of the adequacy of the record, we are compelled to state that fact forcefully here and remand for a hearing as to its existence, even though no precedent justifies such action. This is not a case that demands articulation of fervor concerning gender discrimination; we should await a case that presents that issue in a proper form. This, in summary, is not a case that requires the unique treatment the majority affords it.